JOSEPH I. JONES *vs.* TRUEMAN BELT.—*December* 1844.

Where a complainant alleged the existence of a contract with the defendant, accompanied with collateral circumstances, and called upon him not to state what the contract was, but to admit or deny the existence of the agreement and circumstances set forth ; and the defendant, in his answer, averred another agreement between him and the complainant, and denied the collateral circumstances : the statement of the agreement by the defendant in such case is not *simply* responsive to the contract he was called on to admit or deny. It is not such a denial as requires two witnesses, or one with concurring circumstances to disprove it ; nor in this case was it necessary to disprove the denial of the collateral circumstances by the same amount of proof.

It is a general rule, that a positive denial, in an answer of the contract stated in the bill, should be contradicted or outweighed by the proof of two witnesses, or one witness and pregnant circumstances ; but the principle on which it is predicated is not one of universal application.

As where two papers were exhibited in the cause ; admitted in the defendant's answer, and declared by the court to be the agreement of the parties, they are sufficient to control the answer denying the agreement, without the aid of any oral testimony in their support.

The cases to which the rule was introduced to apply, must be those in which the facts denied depended on oral testimony ; or oral and circumstantial evidence ; not where they were conclusively proved by the production of the written contract of the parties.

Neither are the exceptions to the rule confined to cases, where the contract denied, has been formally signed and executed ; as where a verbal contract is made, to which no witness could testify, and a complainant, charging and seeking its performance, were to exhibit with his bill various letters written by the defendant to third parties, stating the contract, all which

letters, the answer denying the contract, admitted to be genuine; this would dispose with the general rule in question.

A defendant cannot exempt himself from the obligation to make a conveyance which he stipulated to make, on the ground that he has not the legal title.

A vendee, against whom a decree for specific performance of a contract of purchase is sought, may object the want of title in his vendor, as insuperable in ordinary cases.

Ordinarily Chancery will not compel a purchaser to pay the purchase money and accept a defective title. But a vendor has no interest in setting up his own want of title.

A decree which refers to the bill for a description of the lands on which it is intended to operate, is not vague and uncertain in that respect.

This court, in affirming the decree of the Court of Chancery, will make such appropriate additions to its terms, as may be necessary to secure to both parties the benefits, advantages and prospective rights for which they mutually stipulate, in relation to which the decree appealed from was silent, or not sufficiently precise.

APPEAL from the Court of Chancery.

The bill in this cause, which was filed on the 28th November 1838, by the appellee, alleged, that he is the owner in fee simple of a tract of land situated at the intersection of the *Washington Branch* of the *Baltimore and Ohio Rail Road,* and the turnpike road between *Baltimore* and *Washington,* at a place called *Beltsville;* that upon the said tract of land he has a house and improvements, occupied and used as a tavern stand, the value of which mainly consists in its being a stopping and watering place of the trains of cars passing on the rail road between *B.* and *W.* ; that before your orator erected his present improvements on the said tract of land, he enquired of and ascertained from the *B. and O. R. R. Company,* that they would make the said intersection a stopping and watering place, provided a supply of water could be obtained in the vicinity, sufficient to fill the tank or reservoir that it would be necessary for the said company to erect, for the use of the engines, drawing trains on the said branch road. He being interested in the matter, made enquiry at once, and aided in his examination by the officers of said company, ascertained that a supply of water could be obtained in requisite abun-

dance from certain springs on the land belonging to a certain *Joseph J. Jones.* That the place on said land where said springs were found, presented at the time no appearance of an open and running spring, available in its then condition, for useful purposes; but was a damp, wet and sobby piece of ground, indicating the existence of springs of water, which might be made availableby digging down, walling a reservoir, and collecting the small streams of water into one head; the evidence of the supply of water being satisfactorily ascertained, application was made to the said *Jones*, for permission to collect the springs and conduct them by suitable pipes to the intersection of the two roads aforesaid, there to furnish a supply of water to the tank or water station proposed to be built. That the said *Jones* at once assented to the use of the said springs of water, with the understanding, that when the said springs were collected into a common reservoir, and the same walled up, one half of said reservoir should be left open for the use of said *Jones*, and upon condition that your orator would agree to indemnify the said *Jones* for all damages that he might sustain in the opening of the ground, for the purpose of laying down pipes to conduct the water from the spring to the water station aforesaid, the said *Jones* requiring no other compensation for the use of the springs in their then condition, than the use of one half of the spring when it should, by digging and walling, as aforesaid, be made available for useful purposes; and the agreement, aforesaid, of your orator, to indemnify the said *Jones* for damages that he might sustain in laying down the pipes aforesaid. That the said *R. R. Co.* being unwilling to incur the expense of erecting the water station necessary to receive the water from the spring, without an assurance that they should have the use of the water, and being unwilling to meddle with the springs without the consent of the proprietor of the land, required that your orator should obtain from the said *Jones* a binding evidence of his assent. That your orator accordingly applied to the said *J.*, for a deed of conveyance of the said springs, with the rights necessary to the use of them for the

purpose aforesaid; that the said *J.* made no objection to the execution of such an instrument, but alleged that he had recently purchased the land, and had himself, as yet, no deed for it, but that as soon as he obtained a deed, he would execute such an instrument as was requested by your orator, and required by the said *R. R. Co.*; and the said *J.* accordingly addressed a letter to the said *R. R. Co.*, in which he bound himself to execute to your orator a proper conveyance of the said springs, and the rights appendant to their use, and your orator bound himself to the said company to furnish to them the supply of water so to be obtained as aforesaid. And your orator here brings into court and files as a part of his bill of complaint, copies of the original papers, shewing the demand of the said company upon your orator, the obligation of your orator to the said company, witnessed by the said *J.*, and the obligation of the said *J.* to convey when he, himself, should procure a title, which papers are retained by and filed in the office of the *B. and O. R. R. Co.*, and cannot be at this stage of this proceeding obtained by your orator, wherefore he annexes the copies aforesaid, certified under the seal of said company, and which he prays may be taken as part of this, his bill of complaint. And your orator further states, that the said company did, on the execution of the said papers proceed to dig and wall the said springs and bring them into one head, over one half of which they built a covering, capable of being locked up, for their own use, leaving the other half open for the use of the said *Jones*, who thereby obtained a handsome spring, and ample supply of water, where he had, originally, nothing but a marshy and useless spot of land; and that the said company, also, erected a tank or water station at the intersection of the roads aforesaid, and laid down pipes to lead the water into it from the said springs, and that the said company have, in accordance with their understanding with your orator, ever since made use of the said water station for the purpose of supplying the engines of their trains with water; and your orator further states, that he gave an instrument of writing as agreed upon, as aforesaid,

to the said *Jones*, in which your orator agreed to indemnify him for all damages which he might sustain, by the digging of his fields or grounds for the purpose of laying down the pipes aforesaid.    And your orator further states, that he put up considerable and expensive buildings at the intersection of the roads aforesaid, and appropriated the same to the purpose of a tavern stand; and that the same are now under rent to a tenant, upon the condition, that one half of the rent now reserved is to be abated, should the said company cease to use the said water station as heretofore; and your orator further states, that he has been informed and believes, and so your orator expressly charges, that the said *Jones* hath now got a title to the said land, and is in a situation to convey the said spring and rights appendant thereto, to your orator.    That he has been at all times willing and ready, and that he is now willing and ready, to indemnify the said *Jones* for all and any damage that he may have sustained by reason of the digging for and laying down the pipes aforesaid; but that the said *Jones* hath never made any demand upon your orator for damages, nor does your orator believe that he has sustained any, inasmuch as the said *Jones* has now an available supply of water which he had not before, and the fields around the said spring are in grass.    Nevertheless, your orator is ready, and tenders to pay whatever damage the said *Jones* may have sustained, as agreed upon between them; and your orator further states, that the said *Jones* now wholly and peremptorily refuses to convey to your orator, as originally agreed upon, alleging, that your orator has not paid him a consideration for the said spring, and with a view to compel your orator to pay to him such sum as the said *Jones* may please to demand, as consideration for the use of said spring, and not as damages for laying down said pipes through his fields, threatens to take up the said pipes, or otherwise to stop the flow of water from said spring to the said water station, and has.actually given notice to the said company, not to water their engines at the said station, and your orator expressly charges, that the claim thus set up by the said *Jones* is without a shadow of right, and is

done maliciously and fraudulently for the purpose of injuring your orator, and with a view to compel him to pay for the said spring, contrary to the intention and agreement of the said *Jones*, when the said spring was made available, as aforesaid; and your orator expressly charges, that the consideration to the said *Jones* for the privilege of using the said springs, was the advantage that the said *Jones* expected to derive and has since derived, from the making of the same available to him for useful purposes, and the agreement of your orator to indemnify for all damages done by opening the ground to lay pipes, as aforesaid; and your orator further charges expressly, that it was in consequence of the undertaking of the said *Jones* to convey, as aforesaid, that your orator went to the expense of building and improving his property, as aforesaid. And your orator charges, that the interruption of the supply of the water of said spring, will at once deprive his property of the advantage of being a water station, which it now has, and besides reducing the rent paid by the present tenant one half, will otherwise seriously and irreparably injure his said property. And your orator expressly charges, as his belief and apprehension, that the said *Jones* will, if not restrained by authority of this honorable court, take up the said pipes, or otherwise interrupt the flow of water from the said spring to said water station, doing to your orator thereby, a wrong, which no action at law can compensate; and your orator charges expressly, that the said *Jones* hath given notice to the said company to cease to use the said water station, supplied from the said spring, all which actings and doings are contrary, &c.

PRAYER, that the said *Jones* convey to your orator the spring or springs aforesaid, with the rights appendant thereto, and that he may be restrained from interfering with the supply of water to the said water station, from the said spring or springs; for further and other relief; for an injunction to restrain *Jones*, &c., from digging up the pipes leading from the spring on the said *Jones'* land, now used to supply the water station of the *B. and O. R. R. Co.*, at the intersection, &c. at *Beltsville.* &c.

Exhibit. " The President of the *B. and O. R. R. Co.*, requires of *Trueman Belt* an instrument of writing, with, at least, one surety, under a penalty equivalent to expense incurred by the said company in erecting the water station, commencing at *Jones'* spring and ending at the said *Belt's* store, (the contract price is three thousand, seven hundred dollars, more or less,) to convey the piece of ground offered to the board, for a house for engines, cars, &c. ; also, the exclusive right to the spring belonging to the said *Jones*, with free egress and ingress, necessary to improve and keep the same in perpetual repair. JONATHAN JESSOP."

" PRINCE GEORGE'S COUNTY, Md., *September* 25, 1835.

I, *Trueman Belt*, do this day hereby bind myself, my heirs, administrators, and assigns, to execute or cause to be executed, as soon as practicable, to the *B. and O. R. R. Co.*, the necessary instrument or instruments of writing, conveying to the said *R. R. Co.* a full and complete title to the premises herein mentioned, or intended to be mentioned, according to the true intent and meaning of the within instrument of writing, in the penalty of the sum herein mentioned, that is to say, three thousand, seven hundred dollars. In witness, &c.

(Signed,) TRUEMAN BELT, (Seal.)

Witness, (Signed,) *Joseph J. Jones.*

To PHILIP E. THOMAS, Esq."

" Mr. *Trueman Belt* having applied to me for my spring, for the use of the *B. and W. R. R. Co.*, and I having agreed with the said *T. B.*, to convey to him the right of said springs, and being informed by him that the said company require a legal conveyance of the premises, previous to commencing the work necessary to convey the water from said spring or springs to said *Belt's* new store, all I can say or do, at present, is, that I have lately purchased the land on which said spring or springs are situated, and have not as yet obtained a legal title thereto, but expect to get it soon, and will immediately thereafter execute, or cause to be executed to the said *T. B.*, his heirs, or assigns, a good and sufficient title to

the within mentioned premises, for which I hereby bind myself, my heirs, administrators and assigns, in the full and just sum of three thousand, seven hundred dollars. In witness whereof, I hereby affix my hand and seal, this 25th day of September, 1835. (Signed,) JOSEPH J. JONES, (Seal.) Witness, *Amos A. Williams*."

The Chancellor, (BLAND,) on the 28th November, 1838, ordered subpoena and injunction, as prayed.

The defendant's answer admitted, that the said complainant is the owner in fee, of a tract or parcel of land, situate at the intersection of, &c. at &c., and upon said land the said complainant has a house and improvements, which are now used and occupied as a tavern stand, and the value thereof, in a great measure, consists in its being a stopping and watering place for the trains of cars, passing on the *Rail Road* between *B.* and *W.* This defendant knows nothing of any enquiries made by the said complainant of the said *B.* and *O. R. R. Co.*, or of any agreement made between them for establishing a water station for the said company, at the aforesaid place; nor has he any particular knowledge of the examinations made by the said complainant, individually, or in concert with the agents of the said company, or others, upon the lands of this defendant or others, for the purposes of discovering water for the uses of the said road. But he believes that some such examinations were made, and that it was known to the said complainant that there were on the lands of this defendant, and convenient to the tavern stand of the complainant, springs of water, from which a supply might be obtained in requisite abundance for all the purposes of the said tavern stand, and of a water station of said company. This defendant denies that said land where the said springs existed, presented at the time of the pretended discovery thereof, no appearance of an open and running spring, available, in its then condition, for useful purposes; on the contrary, he avers, that on said land, at the very place indicated by the defendant in his bill, and at the very time of the said pretended discovery, there was, and for many years before had been, a spring of running water; which

spring, at the aforesaid time, was used, and for many years before had been used by your orator and his family, and by the former owner of said land and his family, for the supply of water for all their domestic or family purposes ; and this fact was well known to the said complainant at the time of his aforesaid pretended examination ; and this defendant admits, that in the vicinity of the aforesaid spring the ground was damp, wet, and sobby, and indicated the presence or existence of other springs of water, which might be collected into one head and made available for the purposes of a water station, as aforesaid ; but all this was before the time of said pretended discovery well known to this defendant, and might have been discovered by the complainant without encountering all the labor which he pretends that he devoted to the purpose.    And this defendant admits, that after the complainant discovered that a supply of water for the purposes aforesaid, could be obtained from the aforesaid land of this defendant, he applied to this defendant for permission to collect said springs into one reservoir, on the land of this defendant, and thence to conduct them through the land of this defendant by suitable pipes, to the intersection of the aforesaid roads, and there to furnish a supply of water to the tank or water station there proposed to be built, offering at the same time to this defendant to pay to him so much as he reasonably deserved to have for said privilege, to which proposition this defendant acceded ; but this defendant being at the time unable to say what sum he would demand for the privilege aforesaid, not knowing what would be the extent of loss and inconvenience to which he might thereby be subjected, it was agreed and understood between the said complainant and this defendant, that the former might enter on the lands of this defendant, and thereon erect a reservoir for the purpose of collecting said waters, and lay pipes through the lands of this defendant, for conveying said waters to the tank or reservoir to be erected at the water station of the said company, as aforesaid, and that at a future day this defendant and the said complainant should ascertain and fix the sum to which the said defendant should

be entitled, as aforesaid. This defendant denies that he agreed to permit the said complainant to use his aforesaid springs for the purposes aforesaid, upon or with the understanding, that when the said springs were collected into a common reservoir, and the same walled up, that one half of said reservoir should be left open for the use of this defendant, and upon condition that the complainant would agree to indemnify this defendant for all damage that he might sustain in the opening of his ground for the purpose of laying down pipes to conduct the water from the said spring to the water station aforesaid ; and he further denies that he required no other compensation for the use of the said springs in their then condition, than the use of one half of the spring, when it should, by walling and digging, as aforesaid, be made available for useful purposes, and an agreement, that the said complainant would indemnify this defendant for damages which he might sustain by laying down pipes as aforesaid ; on the contrary, this defendant avers, that he did insist upon and require compensation to be made him by the complainant for the use of his aforesaid springs, and yielded to the complainant the privilege aforesaid, only in faith of the complainant undertaking to pay him therefor, so soon as the amount which he deserved to have could be ascertained, and that nothing ever passed between the said complainant and this defendant about dividing said reservoir; but for some time after the same was erected, it was open for the common use of this defendant and the said company, and afterwards, at the solicitation of an agent of the said company, this defendant agreed that the said company might divide the said reservoir, leaving open one part thereof, might cover in the other part thereof for their own use, and he denies that the arrangement between the said complainant and himself in reference to the damages which he should sustain, by the entering upon and opening his ground for the purpose of laying or repairing said pipes, was intended to affect his right to compensation for the use of his springs, as aforesaid, nor can it have any such influence ; and this defendant avers, that agreeing with the complainant, as is here-

in before admitted, and understanding that the *B.* and *O. R. R. Co.* desired some assurance that he had agreed to permit the water to be taken from his springs to the station of the said company, he did agree to write, and actually signed a letter to the President of said company, of which the paper JJJ, No. 1, and filed herewith as part of this answer, professes to be a copy ; but, he submits, that the same does not profess to state the terms of the agreement between the complainant and himself, but simply admits the fact that an agreement between them had been made, and expresses the willingness of this defendant to abide by and execute the same ; and this defendant denies that the complainant at the time aforesaid required him to make a conveyance for said springs, this defendant was not prepared at the moment to make any such conveyance, as he had no legal title to the land, and it was always expected by this defendant, that he was to be satisfied for his springs before he should be required to convey them to the complainant, and this defendant wrote the letter aforesaid in the confidence, that the said complainant would be as prompt to comply with his part of the agreement aforesaid, as this defendant. And this defendant admits, that after the receipt of the aforesaid letter, the said company proceeded to dig out and wall up the aforesaid spring, and some time afterwards, and after this defendant and the said company, had in common used the whole reservoir, the said company with the permission of this defendant, as aforesaid, covered over one half part thereof, and this defendant admits, that he has now in the other part of the said reservoir an abundant supply of water, but he insists that he had, before such improvement made, a sufficient supply for all his purposes ; and that the water, which formerly was of the first quality has, by the walling up and introduction of metallic pipes therein, become greatly deteriorated, so that his condition at present is by no means as good as it was formerly. And this defendant also admits, that the said company has erected a tank for water, at the intersection of said roads, and laid pipes to lead the waters from said springs thereto, and has established a water station at the aforesaid place; and this

defendant admits, that the said complainant executed to him the instrument, marked *Exhibit* JJJ, No. 2, and filed as part of this answer, but the same was intended merely to indemnify this defendant, from the damages which he might sustain from the agents of the company, in entering on his aforesaid lands, and opening the same for the purpose of laying or repairing the water pipes, as aforesaid, and was not intended to set out, nor does it set out, the terms upon which the use of his springs was to be given to the said complainant, as that contract was to be complied with as soon as the parties could determine what compensation was to be given to this defendant, it was not deemed important to reduce the same into writing ; and this defendant admits, that after said agreement, the said complainant made considerable improvements on his aforesaid lands, and although he knows nothing of the agreement between the complainant and his lessee, he has yet no doubt and is willing to admit, that the said premises rent at this moment for more than they would rent in case the water station of the said company, now at the place, was broken up. And this defendant denies that he has obtained a legal title to said land, and even if he had, he admits that he would be unwilling to execute a conveyance of his springs to said complainant, and he denies his obligation to make any such conveyance until he is compensated, as well for the use of the springs, as for the injury he has sustained by the constructing of the reservoir and laying pipes through his lands, and he admits too, that he has given notice, as well to the complainant as to the company, of his aforesaid claims, and of his resolution to cut off the supply of water from said station, unless his reasonable demands are complied with ; and he again denies that he conceded to the complainant the right or privilege of using said springs, in consideration of the advantage that he expected to derive from making the same available, as aforesaid, and of the agreement of indemnity, as aforesaid, and he begs leave to deny that he wishes to injure the property of the said complainant, or to deprive him of any of the advantages which he anticipated from his improvements thereon.    He is willing to abide by his agreement, and he only

requires that it may be executed by the said complainant, and this defendant denies all fraud with which he is charged, and prays that the injunction heretofore granted in the cause, may be dissolved, &c.

The *Exhibit JJJ*, No. 1, filed with defendant's, was a copy of the instrument sealed by him on the 25th September, 1835, addressed to *Philip E. Thomas, Esq.* (*See page*, 112.)

The *Exhibit JJJ*, No. 2, viz :

"Know all men by these presents, that I, *Trueman Belt*, of, &c., am held and firmly bound unto *Joseph J. Jones*, of &c., in the sum of $3,700, to be paid to the said *J. J. J.*, his &c., which payment well and truly to be made and done, I bind myself, my &c., firmly by these presents, sealed with my seal and dated this 25th September, 1835.

Whereas the above named *Trueman Belt*, has contracted with the above named *Joseph J. Jones* for the exclusive use of his, (the said *Joseph J. Jones*,) springs, for the purpose of conveying water therefrom, for the use of the *Baltimore* and *Ohio R. R. Co.*, and the right to enter by such way as may be most convenient, and open a ditch to convey the water from said springs by pipes to the said *Belt's* new store. Now the condition of the above obligation is such, that the above named *Trueman Belt* shall, at all times, save harmless the said *Joseph J. Jones*, his heirs and assigns, and make good to him or them, all the damages that he, the said *Joseph J.*, his heirs or assigns may sustain, by the said *Rail Road Company* entering upon the said *Jones'* land, for the purpose of opening the necessary conveyance of said water, as above specified, and also for entering thereon for the purpose of making any repairs that may ever be necessary, then the obligation to be void and of none effect, else to remain and be of full force and virtue in law.          TRUEMAN BELT, (Seal.)

Signed, sealed and delivered, in the presence of *Amos A. Williams*."

The complainant then pleaded the general replication, and a commission was issued : so much of the proof as is essential, will be found in the opinion of this court.

At July term, 1843, (BLAND,) Chancellor, decreed, that the injunction be made perpetual; that the defendant *Joseph J. Jones*, forthwith execute, acknowledge and deliver, according to law, a good and sufficient deed, conveying from him unto the plaintiff, *Trueman Belt*, his heirs and assigns, all right, interest and use, of, in, and to the lands in the bill of complaint mentioned, to the extent and upon the terms as therein set forth; and costs.

From this decree the defendant appealed to this Court.

The cause was argued before ARCHER, DORSEY, CHAMBERS, SPENCE, STONE and SEMMES, J.

By ALEXANDER for the appellant, and
By PRATT and LATROBE for the appellee.

DORSEY, J., delivered the opinion of this court.

The real question in dispute in this case, looking to the merits of the matters in controversy, is, whether agreeably to the contract between the parties, the appellee was bound to pay any thing to the appellant for the use made of his springs, and the water conveyed from them?

According to the contract alleged in the bill, no such payment was to be made. But this allegation is positively denied by the answer, which asserts, that the appellee applied to the appellant for permission to collect said springs into one reservoir, on the land of the appellant, and thence to conduct them through his lands by suitable pipes, to the intersection of the *Washington* branch of the *Baltimore and Ohio Railroad,* and the turnpike between *Baltimore* and *Washington,* and there to furnish a supply of water to the tank or water station, there proposed to be built; offering at the same time to the appellant, to pay him so much as he reasonably deserved to have for said privilege: to which proposition the defendant acceded; but that the appellant, being at the time unable to say what sum he would demand for the privilege aforesaid, not knowing what would be the extent of loss and inconvenience to which he might thereby

be subjected, it was agreed and understood between the said appellee and appellant, that the former might enter on the lands of the latter, and thereon erect a reservoir for the purpose of collecting said waters, and lay pipes through the appellant's lands for conveying said waters to the tank or reservoir, to be erected at the water station of the said company as aforesaid, and that at a future day, the appellant and appellee should ascertain and fix the sum to which said appellant should be entitled, as aforesaid.

The argument on behalf of the appellant appears to assume, that it is requisite not only to remove the effect of the appellant's denial of the agreement charged in the bill, by the proof of two witnesses, or that of one witness and pregnant circumstances; but that it is requisite by like testimony to disprove the agreement, and its concomitant circumstances set out in the appellant's answer. The correctness of this assumption may well be questioned, when by adverting to the bill, it appears that the appellant was not called on to state what was the contract between the parties, but to admit or deny whether he made the agreement charged in the bill. To such a bill it can hardly be assumed, that the appellant's statement of the contract was simply responsive to that which he was called on to admit or deny.

There having been no exceptions taken in the court below, either to the admissibility of testimony or insufficiency of the averments in the bill, to which the testimony, is to be applied, let us see whether the appellee has proved a case in its general outlines or essential parts, correspondent with that stated in the bill: and in the next place let us inquire, whether the proof so offered is sufficient, also, to countervail the positive denial in the appellant's answer?

The nature of the transaction in question, makes it apparent, that the inspection of the springs by *Samuel* S*prigg* and *Amos A. Williams*, two of the railroad directors, and the conversation then held with the appellant, was prior in point of time to any definite contract between him and the appellee; as the sole motive of the appellee to enter

into the contract, was to carry into effect a contract in regard to the erection of a water station by the *Rail Road Company*; which, of course, and as the testimony shews, it would not enter into, until it had ascertained that the supply of water was adequate. Until then, the company agreed to contract with the appellee, it cannot be presumed that he entered into any definitive contract with the appellant. The testimony of *Sprigg*, shows, that for the construction of the reservoir and use of the water, the appellant desired no compensation, unless he sustained an actual injury thereby; and at that time he could not conceive how he could be thus injured. Under such impressions, that he should in this respect have made the contract stated in the bill of complaint is in a high degree probable. But we think there is no room for conjectures or probabilities on the subject, when we advert to the appellant's exhibits JJJ No. 1, and JJJ No. 2, which in the view of a court of equity, constitute one written agreement between the parties in relation to the matters now in controversy. Instead of one written agreement, signed by both parties, each gave to the other an instrument of writing, containing the stipulations by which the subscribers were to be respectively bound. JJJ No. 1, enumerating the acts to be done by the appellant, and JJJ No. 2, the duties required of the appellee; in execution of their agreement, JJJ No. 2, disproves the statement of the agreement as made by the answer, sustains the allegation in the bill, that nothing was to be paid by the appellee to the appellant, for the use of the springs and the water, and of itself outweighs the positive denial of that fact by the answer. It is not pretended by the answer, nor has any proof been offered to establish it, that there was any separate stipulation for the payment of the amount of damages done to the springs, and of the value of the abstract privilege of using the water. The answer itself repudiates such an idea. If then, it were the design of the appellant to insist on such a claim, for what conceivable reason was such a stipulation left out of JJJ No. 2. There is no allegation that it was done by fraud or mistake. We must there-

fore regard such a claim as forming no part of the contract between the parties.

Having expressed our opinion as to the merits of this controversy, we will now consider some of the objections, taken by the appellant to the chancellor's decree, most, if not all of which, are rather of a technical character, than otherwise. And first, as to the appellant's objection to the decree, that it has been passed against the positive denial in the answer of the contract stated in the bill, which denial has not been contradicted or outweighed by the proof of two witnesses, or one witness and pregnant circumstances, according to the well established principles of a court of equity. In answer to this objection we have only to say, that the principle on which it is predicated is not one of universal application, though undeniably true as a general rule; yet to the circumstances of this case it has no application. Here the two papers which this court have declared constitute the agreement of the parties were exhibited, and admitted, in the appellant's answer, and are sufficient to control the denials in the answer, without the aid of any oral testimony in their support. The cases, to which the rule was intended to apply, must be those in which the facts denied, depended on oral only, or oral and circumstantial evidence; not where they were conclusively proved by the production of the written contract of the parties. Nor are the exceptions to the rule confined to cases where the contract denied has been formally signed and executed by the parties. As for example; suppose a verbal contract were made, to which no witness could testify, and never had been reduced to writing, and executed as the agreement of the contracting parties, and a complainant charging and seeking the performance of such contract, were to exhibit with his bill twenty letters written by the defendant to third persons, stating the contract in every particular: all of which letters were admitted to be genuine by the answer; which however denied the contract. Could it be contended that such letters would be less satisfactory than the proof of twenty witnesses who may have heard the defendant, on one

occasion only, state or admit the same facts that were contained in the letters?   Or that although the proof of two such witnesses would be sufficient to entitle the complainant to the decree he sought, yet that the twenty letters would not?   The absurdity of applying this Chancery rule to such a case is too glaring to be countenanced for a moment.

Another objection urged to the Chancellor's decree, is that it enjoins the execution of a conveyance by the appellant before he has acquired a legal title to the premises to be conveyed; upon the acquisition of which title only he bound himself to convey.   If this objection as to want of title were made by a vendee, against whom a decree for the specific performance of a contract of purchase was sought, it would be insuperable in ordinary circumstances.   As ordinarily a Chancery court would not compel a purchaser to pay the purchase money, and accept a defective title.   But what interest the vendor has in setting up a defect in his own title, as a bar, to a conveyance called for by a vendee, who is willing to accept such defective title, it is difficult to conceive.   He certainly cannot be prejudiced by such a conveyance, and consequently it forms no ground for the reversal of the Chancellor's decree at his instance.   And such a defence comes with a bad grace from the appellant, after having nine or ten years before executed his exhibit J J J, No. 1, and without having assigned any reason or apology for his having so long neglected to perfect his title.

The next objection raised to the decree is, that it is too vague and uncertain in defining the thing to be conveyed, and that it directs the conveyance of the title of the appellant to all the lands mentioned in the complainant's bill.

We do not think the decree, upon a fair interpretation of it, obnoxious to the exceptions thus taken to it.   It refers to the bill, as showing the lands on which the conveyance was to operate, and the extent of the right or interest intended to be transferred.   From the nature and circumstances of this whole transaction, it is manifest, that it was not necessary nor intended that there should be a conveyance of the land itself; but of a mere

privilege or easement exercisable upon, or flowing out of the land to which it was applicable. As this contract was made for the purpose of securing a beneficial easement to the rail road company, and as the rail road company, by its agents, have contracted with the appellant, that one half of the reservoir should be left open for the use of the appellant, to which the appellee hath assented, it is right and proper that the conveyance directed by the said decree, should make provision for the same; and should also secure to the appellee the privilege of entering on the lands of the appellant, for making all necessary repairs to the pipes conveying the water from the reservoir to the water station, upon the said appellee, his heirs, executors, administrators or assigns, thereafter paying to the said appellant, his heirs and assigns, for the damage done to him or them, as the case may be, by the making of the said repairs; and should also secure to the said appellees, his heirs and assigns, an entry upon the said lands of the appellant for the purpose of making the necessary repairs to the said reservoir, and rendering it effective for the purpose for which it was constructed. And for the purpose of providing for these objects and removing all doubt as to the nature of the interest in the lands of the appellant, designed to be conveyed to the appellee, this court will sign a decree affirming the decree of the Chancellor, with costs, and making the appropriate additions thereto, to accomplish the objects aforesaid. For the recovery of the damages, if any, which the appellant has sustained by the laying down of the pipes by which the water is conveyed from the reservoir to the water station, he is left to his remedy upon his exhibit J J J, No. 2.

DECREE AFFIRMED.