# HENRY P. BROOKS, Permanent Trustee of HENRY P. THOMAS, *vs.* HENRY P. THOMAS and JOHN H. T. JEROME.

To overthrow the positive denials in an answer to the allegations of the bill they must be disproved by the testimony of *two* witnesses, or by *one* witness accompanied *with* pregnant circumstances.

A knowledge that a party is negotiating or compromising with his creditors, accompanied with the actual information that he *was generally considered insolvent in his neighborhood,* is, in contemplation of the act of 1834, ch. 293, *notice* of insolvency.

Though a proposition from a debtor for a composition with his creditors is not *conclusive* evidence of insolvency, yet it is one of the most *pregnant circumstances* from which to infer insolvency.

To avoid a transfer, under the act of 1834, ch. 293, the debtor must, at the time, have "no reasonable expectation of being exempted from liability or execution for or on account of his debts without applying for the benefit of the insolvent laws," and the preferred creditor must have *notice* of such condition of insolvency.

APPEAL from the Court of Chancery.

The bill in this case was filed on the 15th of October 1850, by Brooks, as permanent trustee of Thomas, an insolvent debtor, to set aside certain alleged preferences made by the insolvent to Jerome.

The proceedings show that Thomas and one Childress commenced business as grocers in the city of Baltimore, in September 1847, and carried it on till March 1848, when they dissolved, and Childress retired, taking with him the capital which he put in, about $600, and his share of a small esti-

mated profit. No cash capital was furnished by Thomas, but he brought into the concern about $600 worth of groceries which he had purchased from Jerome, (in whose employment he had previously been,) upon credit, who charged them to the firm. After the dissolution in March 1848, Thomas continued to carry on the business by himself until some time in September or early in October following, when he failed, and proposed to make an assignment of all his assets for the benefit of his creditors, provided they would release him. Jerome, to whom he was then indebted to the amount of $2130, agreed to do this, but some of the other creditors refusing, the assignment was not made. On the 12th of October, Thomas sold his entire stock of goods to one Evans for $604.38. The negotiation for this sale was communicated to Jerome by Evans, and before it was finally completed Evans required, and Jerome gave him, a guaranty that the sale should not be disturbed. The whole, or the greater part of, the proceeds of sale he paid over to Jerome, which, with some other money, amounted to $900 in cash, and about the same time transferred to him all his credits and assets of every description, including his furniture, amounting to $1,010. During this whole time it was proved that Jerome and Thomas were on the most intimate terms, the latter having been in the employment of the former, both previous to his going into business and since his failure; very soon after this transfer Thomas left the city and remained away until the following February, when he returned, and on the 5th of that month applied for the benefit of the insolvent laws.

The bill assails this payment of money and transfer of property to Jerome:—1st, because it was made by Thomas with a view and under the expectation of taking the benefit of the insolvent laws, and with intent thereby to give an undue and improper preference; and 2nd, because it was void under the act of 1834, ch. 293.

The allegations of the answer and the proof in the case are sufficiently stated in the opinion of this court, and in that of the chancellor, (JOHNSON,) which is reported in 4 *Md. Ch. Dec.*, 15. The chancellor dismissed the bill, and from this decree the complainant appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Henry P. Brooks* and *Levin Gale* for the appellant, argued:

1st. That the evidence is sufficient to establish the fact, that at the time of making the transfer to Jerome, Thomas contemplated applying for the benefit of the insolvent laws. The facts upon which we rely to show this intent and overthrow the answers are, that in September 1848 he proposed to his creditors to make *an assignment* for their benefit. In October of the same year, he makes this transfer of *all his property* to Jerome. He then left the city until the following February, when he returned, and *immediately* applied for the benefit of those laws, and returned no assets. In his answer he swears, that he did not believe himself insolvent, and that he could pay all his debts, yet the proof shows, that by his own declarations, he admitted that he could only pay a certain *per cent.* of his debts. He says he expects the mercy of his creditors, and that he did not think they would force him to take advantage of the insolvent laws, and yet by this transfer he stripped himself of all means to pay them, and had thereby so exasperated them as to leave resort to the insolvent laws as his only means of relief. *Acts of* 1812, *ch.* 77, *sec.* 1. 1816, *ch.* 221, *sec.* 6. 1845, *ch.* 139, *sec.* 2. 3 *G. & J.*, 188, *Kolb vs. Whitely.* 1 *H. & G.*, 81, *Ringgold vs. Ringgold.* 3 *Story's Rep.*, 446, *Everett vs. Stone.*

2nd. That if the evidence does not sufficiently establish an actual intention to apply, yet it shows that Thomas had, at the time, no reasonable expectation of being exempted from liability otherwise than by an application for the benefit of the insolvent laws, and that Jerome had notice of his insolvent condition, so as to render the transfer void under the act of 1834, *ch.* 293. The main question under this point is, whether Jerome had *notice* of the insolvent condition of Thomas? What is notice? Whatever is sufficient to put a party upon inquiry is good notice in equity. 11 *G. & J.*, 243, *Magruder vs. Peter.* 3 *Md. Ch. Dec.*, 493, *Ringgold vs. Bryan.* 3 *Metcalf*, 405, *Curtis vs. Mundy.* The case last cited estab-

47     V.8

lishes the true test, viz., that the "notice is sufficient if it be such as men usually act upon in the ordinary affairs of life." See also, 1 *Gill*, 412, *Cole vs. Albers & Runge*. Now what are the facts *proved* in this case. Evans swears that he stated "*to Jerome*," that he wanted indemnity, because "Thomas was *generally considered insolvent, this was the general opinion in the neighborhood.*" Jerome and Thomas had been upon the most intimate business relations, both prior and subsequent to the latter's failure. In September 1848, Thomas proposed *to Jerome to give up his assets for the benefit of his creditors.* This in effect is a proposition *of insolvency.* He then conveyed to Jerome book-accounts, *notes*, credits, and all his property and effects, including *household furniture; and* Jerome says in his answer, that he offered to sign a release to Thomas upon conveyance of all his property for the benefit of his. creditors. It is *impossible* to reconcile these facts with the answer of Jerome denying knowledge of Thomas' *insolvent* condition; and they clearly satisfy the *rule* by which an answer is to be overthrown, even if this case does not come within the *exception* to the rule laid down in 2 *Gill*, 106, *Jones vs. Belt.* As to what is the *insolvent condition*, of which the preferred creditor is to *have notice*, see 2 *Kent*, 189, 469. 16 *Eng. C. L. Rep.*, 166, *Shone vs. Lucas.* 4 *Cushing*, 134, *Thompson vs. Thompson.* 1 *Maule & Selw.*, 338, *Bayly vs. Schofield.* 3 *Story's Rep.*, 446, *Everett vs. Stone.* Insolvency, according to these authorities, means an inability to pay debts *in the usual and ordinary course of business.*

*Charles H. Pitts* for the appellees, argued, that the bill was properly dismissed:

1st. Because Thomas, by his answer, expressly denies that he made the payments and transfers to Jerome with a view and under the expectation of being and becoming an insolvent debtor, and that there is no sufficient evidence in the record to rebut this denial. To be an insolvent debtor under our laws, means to be in such a state as to contemplate taking the benefit of the insolvent laws. Mere inability to pay debts in the usual course of business will not suffice; there must also be an

Brooks, Trustee of Thomas, vs. Thomas & Jerome.

*intent to take the benefit of the insolvent laws.* This is *legal insolvency* in this State. 5 *G. & J.*, 377, *Hickley vs. Farmers & Merchants Bank.* 7 *G. & J.*, 170, *Dulaney vs. Hoffman.* The answer in regard to such intent must stand, and is *conclusive* unless contradicted by *two* witnesses, or by *one with* pregnant circumstances. 9 *Gill*, 211, *Beatty vs. Davis.* 3 *Md. Rep.*, 229, *Glenn vs. Grover & McColm.* There is not here a solitary witness to contradict the answer of Thomas upon this point, and however strong the circumstances may be, they *alone* will not do. 7 *Md. Rep.*, 537, *Feigley vs. Feigley.*

2nd. Because there is no sufficient evidence in the record to establish the fact, that Jerome had knowledge of Thomas' insolvency at the time he received the money, *choses in action* and property from him. He expressly denies in his answer that he had such knowledge. Inquiry into *obligations*, and the condition of assets *alone*, could be the *basis of such knowledge.* 1 *Gill*, 412, *Cole vs. Albers & Range.* Jerome says he did not know the amount of assets or the amount of *obligations.* "Knowledge of *insolvency as aforesaid*," in the act of 1834, means knowledge that the party was in such a condition as left him no reasonable expectation of relief except by resort to the benefit of the insolvent laws. 7 *Gill*, 439, *Stewart vs. The Union Bank.* 6 *G. & J.*, 323, *Crawfords & Sellman, vs. Taylor.* Jerome says he did not know that Thomas was insolvent, and that when the proposition was made to transfer his property for the benefit of his creditors, Thomas assured him that he was *solvent*, and from that time to the time of his application, there is no fact brought home to *Jerome's knowledge* from which *notice* of a different condition could be inferred. The answer, therefore, must stand.

3rd. Because there was an adequate remedy at law. 9 *Metcalf*, 470, *Thayer, et al., vs. Smith.* 7 *Cushing*, 181, *Woodman vs. Saltonstall.* 8 *Ala.*, 743, *Knotts vs. Tarver.* 1 *Story's Eq.*, sec. 76.

MASON, J., delivered the opinion of this court.

The questions presented on this appeal arise under the act of 1834, ch. 293, sec. 1, and are, first, whether, when Thomas

made the transfer to Jerome, the defendant, he did so in contemplation of insolvency, or that at the time he "had no reasonable expectation of being exempted from liability or execution for or on account of his debts, without applying for the benefit of the insolvent laws?" and secondly, if so, whether Jerome "had notice of the condition of insolvency as aforesaid of said debtor?" Unless these two circumstances are established, the deed in question, as to the party claiming under it, cannot be avoided.

The defendant, Jerome, denies flatly, in his answer, that he knew of the insolvency of Thomas, and unless the force of this answer be broken by independent proof, in accordance with the rules of evidence adopted in such cases, his statement on this point must be sustained. A positive denial in an answer to the allegations of the bill must be disproved by the testimony of two witnesses, or by one witness with pregnant circumstances. We will not pause to inquire whether this case falls within the exception to this general rule, which is laid down in the case of *Jones vs. Belt,* 2 *Gill,* 106, because we think that under the rule itself, the answer of the defendant, Jerome, has been sufficiently disproved so as to destroy its force as a ground of defence against the claim of the complainant.

Evans, a competent witness, expressly states, that he "stated to Jerome that he wanted indemnity, as Thomas was generally considered insolvent—this was the general opinion in the neighborhood. Mr. Jerome did not seem surprised at witness' remark." Jerome, in reply, "informed witness that Thomas sold the goods by consent of the creditors," and that "Jerome did give the guaranty."

If this is not notice or information of the insolvency of the defendant, Thomas, we are at a loss to conjecture what other kind of notice could be furnished of such a fact. From the nature and character of insolvency, the knowledge of its existence in third parties must of necessity be to some extent conjectural or inferential, unless the information should be derived directly from the insolvent himself; and in a majority of cases, even the party is often deceived as to his own condition, and other persons are often as well, if not better, informed of his

pecuniary circumstances than he is himself. A knowledge that a party is negotiating or compromising with his creditors, accompanied with the actual information that he was *generally considered insolvent in his neighborhood*, is, in contemplation of the act of 1834, "notice of the condition of insolvency of said debtor." Nor do we consider this as such "technical or constructive notice," as is referred to in the case of *Cole vs. Albers & Runge*, 1 *Gill*, 412, but we regard it as *an actual notice*, as much so, as such a fact ordinarily is susceptible of being the subject of actual notice.

The facts just mentioned were established by the evidence of Evans, and thus we have the positive testimony of *one witness*. But under the rule this is not sufficient, unless it be accompanied *with pregnant circumstances*. These are to be found, we think, in the close and intimate relations, both business and social, which existed between Thomas and Jerome, and in the fact, still more pregnant with an inference of the knowledge of insolvency on the part of Jerome, that Thomas proposed, previous to the preference complained of, to make an assignment of all his property for the benefit of his creditors, upon condition that they would release him from further responsibility, and *the appellee admits that the proposition was made to him and agreed to*. While we are willing to admit that a proposition from a debtor for a composition with his creditors is not conclusive evidence of insolvency, yet it is still one of the most pregnant circumstances imaginable from which insolvency can be inferred. Indeed it may not be too much to say, that it is an unheard of circumstance for a debtor to propose a composition with his creditors, unless he be in a state of insolvency.

From all the facts in the case the conclusion is irresistible to our minds, that at the time of the transfer of money and property to Jerome by Thomas, the latter was insolvent, or that he had no reasonable expectation of being exempted from liability or execution for or on account of his debts, without applying for the benefit of the insolvent laws, and that the former had knowledge of the fact.

The transfer or assignment is therefore void, and the property which it embraced vested in the trustee, and a decree will be passed accordingly.

*Decree reversed, with costs, and case ordered*
*to the circuit court of Baltimore city.*

LE GRAND, C. J., dissented, and delivered the following opinion:

I have carefully examined this case and concur in the correctness of the decree of the chancellor, and for the reasons assigned by him. I feel bound to say, however, that it is a case—apart from the stern rules prescribed by the law of evidence for the interpretation of the motives of parties—entitling the appellant to the relief sought by him; for it is impossible to suppose—when his close and intimate relation to Thomas is considered and the taking of all his property—that he was not aware of his insolvent condition; a fact which, according to the testimony of Mr. Evans, seems to have been generally believed. But Mr. Jerome denies such knowledge, and he is not contradicted as fully and in the way required by the law, and as a consequence, his denial prevails.