# Ann Trump, Exc'r of William B. Trump, vs. Philip Baltzell, Surv'g Partner of Thomas Baltzell.

A partnership was dissolved by articles of dissolution, dated 9th of February 1839, by which the complainants were to become possessed of all the stock, debts and assets of the firm, and pay to defendant a certain sum, and these conditions being complied with, the parties were mutually to release all claims against each other. An account was found on the books charging defendant with $2100 for various items, balanced by an entry of credit for that sum "for expenses," dated the 1st of February 1839. Upon a bill attacking this entry as unauthorised by the terms of the partnership, and fraudulently made pending the negotiation for a dissolution. HELD:

1st. If the defendant had stood charged on the books with the $2100 at the time the terms of dissolution were agreed upon, the settlement would have released the indebtedness.

2nd. But if the terms of dissolution were settled on the supposition that defendant's account had been properly balanced, when in fact the credit had been improperly and fraudulently entered, the complainants are entitled to recover the amount of the debit in defendant's account.

3rd. The answer insisting that the credit was legitimate and just, and authorised by the written articles of copartnership, cannot avail against such articles; the written evidence must speak for itself.

4th. In the absence of all proof on the subject it must be assumed, that complainants dealt with defendant under the belief that the books had been fairly and correctly kept, and the credit being proved improper, they are entitled to relief against it.

5th. The period of filing the bill is the proper time from which interest should commence to run on the claim.

By one of the articles of a partnership agreement, a partner bound himself "not to take out of the business or stock in trade of the partnership, more than $700 per annum in goods or money, or both." HELD:

That this article could not be construed as an agreement that this partner should have a salary of $700 per annum, in consideration of his giving his attention to the business of the firm.

This article was evidently designed to protect the capital from diminution during the continuance of the firm, and the authority to draw annually a sum not exceeding $700, is to be regarded as a restriction on the rights of the partner to appropriate beyond that amount, his proportion either of the capital or profits, until the partnership should expire.

The testimony of a witness that he suggested this article and explained its meaning to the partner, to the effect that the amount was to be used by him for family purposes, and to be charged to him individually, and not as any additional compensation, is competent evidence under the act of 1832, ch. 302, it not having been excepted to.

CROSS-APPEALS from the Court of Chancery.

The bill in this case was filed by Thomas and Philip Baltzell, on the 24th of June 1841, against William B. Trump, to recover the sum of $2100, under the facts alleged in the bill, which, together with the terms of the articles of copartnership between the parties, are sufficiently stated in the opinion of this court.

The partnership commenced on the 7th of February 1835, and was dissolved by articles of dissolution, dated the 9th of February 1838. By the first of these articles, the Baltzells bound themselves to pay all claims against the firm up to the date of the dissolution, and release Trump from all liability as a copartner. By the second, Trump assigned to the Baltzells all his interest in all accounts, notes, bonds, mortgages, judgments or claims in any other form, belonging to or due the firm, be the same more or less. By the third, the Baltzells agreed to take all such accounts, &c., at their own risk, and to relinquish all claim against Trump for any loss that might be sustained in the collection thereof. By the fourth and fifth, Trump assigned to the Baltzells all his interest in the stock of goods and cash on hand, be the same more or

less. By the sixth, Trump agreed to advise the Baltzells in regard to the collection of the debts of the firm. By the seventh, the Baltzells agreed to pay Trump $15,500. By the eighth, Trump agreed to give the Baltzells a bond, with security, that he had contracted no other debts or liabilities against the firm, than those enumerated in a schedule taken from the books, and to indemnify them accordingly against any other liabilities created by him individually, if any such there be. By the ninth, the Baltzells agreed to give their bond, with security, for the full performance of their engagement to pay the debts of the firm. Then follows this stipulation: "The above conditions being fulfilled, William B. Trump, Thomas Baltzell and Philip Baltzell, mutually renounce all claims against each other, any loss or gain on any accounts or claims assigned to either party, to be the loss or gain of said party as the case may be."

After the dissolution and when the books came to the possession of the Baltzells, there was found on the leger an account against William B. Trump, in which he stands charged with various items of cash, commencing the 27th of March 1835, and ending the 22nd of January 1838, amounting to $2100, and balanced by the following entry: "1838, February 1st, Cr., by expenses, $2100," which the bill attacks, as above stated, as unwarranted by the terms of the copartnership, and, as made, in contemplation of the dissolution, and with a view to deceive and defraud the complainants.

The answer of Trump insists, that the charge complained of was authorised by the terms of the copartnership, as a compensation for services rendered by him in the transaction of the business of the firm; that the entries were made in the books of the firm before the expiration of the partnership, which books were open to the inspection and examination of the complainants, and that they were aware of their existence when they purchased the interest of the defendant, and that by the terms of the dissolution, they are estopped from claiming as against him.

The testimony in the cause is made up of the articles of

38      v. 3

copartnership and dissolution, and the evidence of three witnesses examined by the complainants, the purport of which is sufficiently stated in the opinion of this court and the argument of counsel. The chancellor decreed the payment by the defendant to the complainants of the amount of the charge complained of, with interest from the day of filing the bill, from which decree both parties appealed. The opinion of the chancellor accompanying this decree, is reported in 1 *Md. Chancery Decisions,* 517.

The cause was argued before Le Grand, C. J., Mason and Tuck, J.

*Charles F. Mayer* for Trump.

1. The articles of dissolution, providing for a release of the parties, reciprocally, from all claims, extinguished any the Baltzells might have had against Trump, for money drawn by him from the partnership funds; and therefore, his actual or possible debt to the firm was not in view as part of the basis of the settlement on the dissolution, and is, under no circumstances, to be recurred to by the Baltzells, even supposing the credit of $2100 to have been entered without their knowledge when the settlement was made.

2. The denials and responsive averments of the answer, show that the entry existed while the settlement was negotiating, and the Baltzells having the freest access to the books, must be understood to have been aware of it, and are barred now, by that knowledge, of all claim.

3. If the entry of the credit was not in the account, then the gross debit stood against Trump, and the Baltzells made the settlement, knowing he was a debtor, and it was released by the clause of reciprocal release in the articles of dissolution. 6 *Iredell,* 111. They received their consideration by receiving all the assets of the firm for an amount paid to Trump less than his half; and no evidence was given to show that they suffered any loss by the settlement.

4. If the debit was on the books without the credit now complained of, and in a form that did not explain itself, the

Baltzells were put on inquiry as to its meaning; and not having objected to it when thus knowing and seeing it before the settlement, they cannot now claim payment of it.

5. This debit was not a part of the claims or assets of the partnership, which Trump assigned to the Baltzells by the "articles of dissolution." In no view can that assignment be understood as of any claims other than as against strangers, who had become indebted to the firm. 6 *Iredell*, 111.

6. If they have any cause of complaint, their appropriate equity is to have the whole settlement opened, and to account for all their receipts from the partnership estate, and *showing then the results and merits of their bargain under the settlement*, let this court determine against which party the balance has accrued. *Story's Eq.*, sec. 220. 1 *Simons*, 89. 6 *Madd. Rep.*, 2. 13 *Vermont*, 191. 19 *Maine*, 211. 11 *Pet.*, 71. 1 *Ves.*, *Jr.*, 210. 1 *Sch. & Lef.*, 41. No decree for the $2100 should therefore, under any view of the facts, have passed, especially as it appears Trump entered into the settlement under an idea that he was not to pay the $2100. This definition of all the equity the Baltzells could possibly have is strengthened by the consideration, *that full three years and-a-half* were allowed to elapse before the bill was filed, they, during all that time, asserting the exclusive control of the partnership estate.

7. One-half of the $2100 being the property of Trump, as partner, he cannot be considered as having owed more than a half to the Baltzells, and the decree should, under any circumstances, have been only for $1050, as principal.

8. There should have been no charge of interest on the claim to any extent, without an account rendered by the Baltzells, of all their collections, showing their condition to be worse than if no settlement had been made, and showing what funds from time to time they had in hand. At all events, their delay in filing the bill induced Trump to believe in the final character of the settlement, while they, during its delay, held him excluded from all control of the partnership property, and at furthest, interest could not run from a period

earlier than the filing of the bill. Such must be the rule where an equity is in the slightest measure questionable.

*John Nelson* for the Baltzells.

On the 9th of Feb'y 1835, the articles of copartnership were entered into. By these articles, Trump was to advance $7000, as capital, and the Baltzells also $7000. About the time of the expiration of the copartnership, the agreement was entered into for a dissolution. While this negotiation was going on, the entry was made by Trump. There are then but two inquiries:—1st. Was this *a debt* under the articles? and 2nd. Whether, under the terms of dissolution, this debt was extinguished?

The articles of copartnership require a particular expense-book to be kept of all the expenses of the concern. The controversy is on the fifth article, which binds Trump not to take out more than $700 per annum. This is a limitation upon his discretion, as to the use of the partnership effects. It is perfectly apparent, that the allegations of the bill state the true considerations influencing the parties to this agreement. The very article relied on *gives* Trump nothing, enables him to receive nothing, but is merely a restriction upon him as to the amount he is to draw from the funds and effects. If it had been designed to give him a salary of $700 for his services, how comes it that there is a restriction that he shall not take *more* than $700?

But if there was any doubt the other articles explain it. The fourth article requires the *balance,* after deducting expenses, to be divided; not *after deducting so much for salary* and then divide the balance. But the testimony removes all difficulty. Raymond says he suggested the article in controversy, and explained the meaning and purport of it to *Trump.* Again, the evidence shows that the entry was made by Trump, after the negotiation for a dissolution was begun.

The articles of dissolution are very plain. It is not a case of settlement and adjustment of partnership accounts, but is a stipulation for a purchase as if made by a stranger. The Baltzells bought all the debts and effects due to the firm; and

if Trump owed to the firm $2100 in any way, it was transferred to the Baltzells. They buy as individuals and not as partners, and hold as individuals. The last clause is expressly upon condition, that "the above conditions being performed."

It is not the case of a settlement of accounts of a partnership, but a simple purchase out of one's interest for a gross sum, so that the gain or loss on either side was not to be made a subject of complaint by the other.

In the case in 6 *Iredell*, 111, the party did not pretend to be a purchaser of the effects of the firm, but it was the case of a sale by one partner of his effects in the firm, and then seeking to recover from the firm a part of the effects. It is the very converse of the case at bar.

A settlement may be opened for fraud by the party against whom the fraud is perpetrated, but not at the instance of the party committing the fraud. *Story's Equity*, sec. 220.    19 *Maine Rep.*, 211.

The cross-appeal only involves the question of interest. If there was a fraud, the interest ought to have been calculated from the time of its *perpetration*.

*Mayer* in reply.

This is nothing but an attempt to construe the debit against Wm. B. Trump into a debt due by Trump, notwithstanding the release of all claims, and the actual payment of money to Trump for his interest in the concern.

The debt was on the books when the settlement was made, and their own witness says he examined the books and found the *debit* there. The very payment of the money would have extinguished the claim. It is the very case in 6 *Iredell*.

The assignment was of claims due the firm by other parties and not by Trump himself. The firm could not enforce this claim against him, and it was only claims, enforcible against some one, that were assigned. He had no interest in the claim against himself. In paying him the $15,500, they must have taken into consideration the claim they had against him by virtue of the debit.

LE GRAND, C. J., delivered the opinion of this court.

These are cross-appeals from a decree of the chancellor, passed in a cause in which the facts, as alleged in the bill, are substantially as follows: Thomas and Philip Baltzell entered into a copartnership with William B. Trump, and the terms under which it was to exist and be conducted were specified in writing. These were, so far as the questions in this case are involved, that the Baltzells and Trump were to contribute to the capital an equal amount, constituting in the whole the sum of fourteen thousand dollars. The partnership was to last for three years. It was stipulated by the third article of the agreement, that all expenses relating to the business of the firm were to be taken out of its funds, and a regular expense account should be opened on the books of the firm, and each and every article charged as the expense accrued. The fifth article was in these words:—" The said William B. Trump binds himself not to take out of the business or stock in trade of the said firm of William B. Trump & Co., more than seven hundred dollars per annum, in goods, or money, or both." The bill further states, that as the time fixed for the dissolution approached that matter became one of negotiation and arrangement between the parties constituting the firm, and resulted in an arrangement by which the Baltzells were to become possessed and entitled to all the stock, debts and assets of the firm, pay its debts, and to Trump, the sum of fifteen thousand five hundred dollars; that the Baltzells faithfully complied with all their obligations under the contract. That after they came into possession of the books they discovered certain entries therein wholly unauthorised by the terms of their copartnership; that on the leger of the firm an account had been opened against Trump, in which he was charged with various items amounting in the aggregate to the sum of twenty-one hundred dollars; and that for the purpose of balancing the account, Trump, on the first day of February 1838, whilst the negotiation of the terms of the dissolution was pending, credited the account by an entry of $2100, for expenses, there being no evidence on any of the

books showing in what manner such expenses had been in-curred.

The answer admits most of the facts stated in the bill, and claims the credit of $2100 as compensation allowed to Trump, at the rate of $700 per annum, under the articles of copartnership, for his personal services in the supervision and conduct of the business.

It does not apppear from the testimony in the cause, with any great degree of certainty, whether the credit of $2100 had been entered on the leger when the terms of dissolution were agreed upon. It bears date the first day of February, and the agreement for dissolution was executed on the ninth of the same month. Had Trump stood charged on the books with the $2100 at the time the terms of dissolution were agreed upon, we would be of the opinion that the settlement contemplated a release of that indebtedness, and, we think, the case of *Patterson vs. Martin,* 6 *Iredell,* 111, is a sufficient authority for it; but if the terms of dissolution were settled on the supposition that the account of Trump had been properly balanced, when, in point of fact, the credit had been improperly and fraudulently entered, then we are of the opinion, that the Baltzells are entitled to recover the amount of the debit to the account of Trump.

The answer of Trump, it is true, claims the credit as legitimate and just, but this cannot avail against the written evidence of which this claim is predicated. It must speak for itself. *Jones vs. Belt,* 2 *Gill,* 106.

We concur in opinion with the chancellor, that the claim of Trump for compensation has no countenance from the articles of copartnership. The fifth article evidently was designed to protect the capital from diminution during the continuance of the firm, and the authority which it gives to Trump to draw out of the concern, annually, a sum not exceeding seven hundred dollars, must be regarded as a limitation on his right to appropriate, beyond that amount, his proportion either of the capital or profits until the partnership should cease by its own terms. And it is obvious to us, that

this construction was placed upon it by Mr. Trump, for in conformity with the articles of copartnership an expense account was opened, as well as one against himself, in neither of which, until the first day of February 1838, was there any entry for compensation for his services.   The debits in his individual account commence as early as March the 27th, 1835, and the claim of $700 per year, claimed under the third article of the terms of partnership, is not set up until nearly three years thereafter, and then a claim for three years services is preferred, and that too, without any explanation of its elements.   This fact, independently of the plain purport of the language of the articles of agreement, would be sufficient to satisfy us of the understanding which Mr. Trump had of his rights.   But the testimony of Mr. Raymond must remove all doubt.   He says—and what he says is competent evidence under the act of 1832, chap. 302, it not having been excepted to—"that he suggested the article restricting the said Trump to the drawing out of $700 per annum; that amount was then explained to William B. Trump, by the witness, to be used by him for family purposes, *was to be charged to him individually, and not as any additional compensation.*"

There is not a particle of evidence showing that the Baltzells were aware, at time of the dissolution, the unauthorised credit of $2100 was for compensation claimed under the third article of agreement of copartnership.   The entry gave no such explanation; it merely declared that Trump was entitled to it for "*expenses*" incurred in the business.   We must assume, in the absence of all proof on the subject, that the Baltzells dealt with Trump under the belief that the books had been fairly and correctly kept, and to have entered into the arrangement for the purchase of the effects of the firm under this conviction; and if, by means of this improper credit, the settlement realized to Trump $2100 more than the Baltzells agreed to pay him, that is to say, $17,500 instead $15,500, they are entitled to relief.

We concur with the chancellor, that neither the articles of copartnership, the understanding of the parties, nor the testi-

mony of the witnesses give the slightest color to the claim preferred in the answer of Trump.

In regard to the time from which interest should commence to run, we think with the chancellor, that no injustice would be done by fixing the period of the filing of the bill as the proper time, and therefore affirm the decree.

*Decree affirmed.*

MASON, J., dissented.