## ARCHIBALD C. GIBBS *vs.* GEORGE GALE and HENRY J. STRANBERG.

Parol evidence showing that a lessor did not intend by a certain covenant in the lease to bind his assigns, and that the words *"heirs and assigns,"* were left out of the covenant for this reason, admitted without exception to its admissibility or competency, under the act of 1832, ch. 302, must be considered and allowed by this court to have the *effect* of making the covenant *personal* in its character, and not binding upon *heirs or assigns.*

The language of this act is very full and explicit, requiring *"all objections"* to "the *admissibility of evidence"* to be made in the court below, and that *"no point"* relating to the admissibility of evidence "shall be *raised"* in, or *"noticed* or *determined* or *acted upon* by the Court of Appeals," unless raised by exceptions in the court below.

Objection to the *admissibility* of evidence in any case, can only be properly founded on the hypothesis that such testimony violates the law of evidence, in this, that the law prohibits the proof of the particular fact in the *manner* proposed, or of its irrelevancy to the subject matter of inquiry.

The rule of law, which forbids the introduction of *parol* evidence to explain a written contract, like any other rule of evidence, is subject to the power of the legislature to abolish or modify it in every case, or to modify or annul it under particular circumstances, and this has been done by the act of 1832, ch. 302, where objection is not taken in the court below.

APPEAL from the Equity Side of the Circuit Court for Anne Arundel county.

This appeal was taken from an order of the court below, (THOMAS DONALDSON, Special Judge,) dissolving an injunction which had been granted upon a bill filed by the appellant, on the 25th of July 1851. The facts of the case, so far as necessary to elucidate the opinion of this court, are sufficiently stated therein.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Wm. A. Talbott* and *Reverdy Johnson* for the appellant, stated, that the evidence in the case shows the complainant to be the assignee of the term in question, or if it does not, he is possessed of the term under the lease as tenant, and has been so recognised by the defendant, Gale, to whom he has paid the rent, and he has therefore such an equitable title as entitles him to ask the relief prayed for. It also shows, that all the covenants on the part of the lessees and those claiming under them have been complied with. They then argued:—

1st. That the whole evidence of George B. Stewart and Thomas M. Crouch, and William F. Hause, so far as it seeks to explain the covenant in question, is wholly inadmissible and cannot be regarded by this court as having the effect to vary or explain the written contract of the parties. *4 H. & J.*, 281, *Howard vs. Rogers.* *6 H. & J.*, 27, *Wesley vs. Thomas.* This is unquestionably the *common law* rule. Before considering the effect of the act of 1832, ch. 302, we may remark, that this proof does not sustain the allegations of the answer as to the original lease tendered to Stewart for execution. *Stewart* does not say why he refused to execute that lease, but refers us to the paper itself as showing what the reasons were. *Crouch* says it was not executed for certain reasons, one of which will appear from the bottom of the paper itself; that he required Stewart and his assigns to give him and his partner the exclusive *landing privilege* on the whole land, which Stewart refused to do; but he refused, not because he knew the effect of a covenant *personal* and a real covenant running with the land, but because he did not wish to depreciate the value of the land when he might wish to sell. He was willing to bind *himself*, and it is admitted that the covenant is binding upon him. *Gale* never thought there was any difference between a covenant containing the word *"assigns"* and one which did not. He admits that *he* could not use the wharf as a *steamboat landing*, but says he can lease it to another to be so used. These facts show, that none of these parties ever

entertained the idea of there being any difference between a covenant real and a covenant personal until about the time of the filing of this bill. But suppose we are wrong in regard to our inferences from this proof, the question then recurs, is this evidence admissible, and what is the effect of it as it stands upon the record, in the absence of exceptions under the act of 1832? That act requires exceptions "to the *admissibility* of evidence" to be made in the court below, but it does not operate upon the *effect* of the evidence after it is in, which is an entirely independent and distinct matter. The *admissibility* of evidence is one thing, and the *effect* of it quite another. Here the *written lease* and the *parol evidence* are both in, and they are inconsistent; now which is to govern, and what are the rights of the parties under it? The question is, what are you to do with the evidence when it is in under such circumstances? If, at common law, the *written agreement* merges the *parol agreement,* and the latter is to be regarded as nothing, and the statute does not change the common law in this respect, how can the *parol evidence* affect the *written contract?* and how can this court say that it may explain or vary the *written lease?* This construction of the statute is sustained by the opinion of the court in the case of *Fitzhugh vs. McPherson,* 9 *G. & J.,* 69, 70.

2nd. We come now to consider the real question at issue between the parties, that is, the true construction and legal meaning of this covenant. The proof in the case clearly shows, that without this landing privilege the leased land would not be worth more than $20 *per annum,* yet in consideration of this stipulation the lessees agree to give $200 per annum for it. This covenant, therefore, was the most important obligation in the whole lease: it entered into the *quantum* of the *rent.* We say it is a covenant respecting the thing demised, running with the whole tract of land of both lessor and lessee, and binding assigns though not named. The six resolutions in *Spencer's Case,* 5 *Coke's Rep.,* 17, establish as a proposition of universal truth, that any covenant *affecting the rent reserved runs with the land.* Here the rent of $200 per annum, is made up mainly of the stipulation

in this very covenant, that there should be no other landing on the other part of the tract of land belonging to the lessor, during the continuance of the lease. But it is supposed, because the thing to be done or forborne to be done is to be done *off the demised premises,* it becomes a *personal* covenant in contradistinction to a *real* covenant. Such is said to be the decision of Lord Brougham, in the case of *Keppell vs. Bailey,* 2 *Mylne & Keene,* 517, in 8 *Cond. Eng. Ch. Rep.,* 119, but we do not understand him so to decide, and if he does he is clearly wrong. He admits that whether covenants run with the land or not, depends upon *privity* of estate, and bases his decision in that case, that that particular covenant did not run with the land because there was no such privity. The case of the *Duke of Bedford vs. The Trustees of the British Museum,* 8 *Cond. Eng. Ch. Rep.,* 128, immediately follows the case of *Keppel vs. Bailey,* and if the point raised in the last case, that the covenant did not run with the land, because the thing to be done was to be done *off the demised premises,* had been considered by the *Vice Chancellor* as available, it would have decided the case, and yet it was argued and decided upon other grounds. See also 2 *Sugden on Vend.,* 500, where the case of *Keppell vs. Bailey,* is reviewed and commented upon. In our case the defendant Gale is the owner, both of the reversion in the demised premises and of the land bound by the covenant, acquiring both by the same conveyance from the original lessor; it is therefore like the case of *Vyvyan vs. Arthur,* 8 *Eng. C. L. Rep.,* 113, where a covenant to do suit to a certain will was held to run with the land, and suit was brought upon it against the lessee, by the assignee of the reversion of the land demised and of the mill. A covenant to insure against fire runs with the land. 5 *Barn & Ald.,* 1, *Vernon vs. Smith.* In *Jourdian vs. Wilson,* 6 *Eng. C. L. Rep.,* 420, a covenant to supply the leased premises with water from the adjoining land, a thing to be done off the demised premises but tending to support the thing demised, was held to run with the land. In our case the covenant is to abstain from doing certain

things on the adjoining land, which tend to support the thing demised, and there can be no difference between a covenant to do a thing and a covenant to forbear doing it. 4 *Paige,* 510, *Trustees of Watertown vs. Cowen.* See also 17 *Eng. C. L. Rep.,* 428, *Sampson vs. Easterby.* 12 *East.,* 469, *Bamford vs. Hayley.* 3 *Wilson,* 25, 29, *Bally vs. Wells.* 5 *Coke's Rep.,* 24, *Dean & Chapter of Windsor's Case.* The case of *Norman vs. Wells,* 17 *Wend.,* 136, is the very case at bar : it was a covenant by a lessor of a mill-site, that he would not let or establish any other place or site on the same stream, and it was held to run with the land, and the suit was brought, as here, by the assignee of the lessee, for a breach of this covenant. It is true that in that case the covenant was with the *"assigns"* of the lessor, but if the covenant be appurtenant to the term and runs with the land, it is immaterial whether assigns are named or not.

3rd. But admitting that this covenant does not run with the land, so as to authorise an action at law upon it, we then say, that Gale took and accepted his conveyance of the whole tract, including the demised premises, with *full knowledge* of this covenant, and he is therefore in *equity* bound to respect it. His deed is made *subject to the lease,* which is equivalent to a recital of it in terms. We could have restrained Stewart by injunction from violating this covenant, yet *Gale* comes in with *full notice,* and receives the *same rent* but refuses to comply with the covenant. Is not this a *fraud* of which equity will take cognizance ? To our minds there is no plainer proposition. On this point see 7 *H. & J.,* 468, *Bosley vs. McKim.* 23 *Eng. Law & Eq. Rep.,* 610, *Patching vs. Dubbins.* 22 *Eng. Ch. Rep.,* 774, *Tulk vs. Moxhay.* 16 *Eng. Ch. Rep.,* 196, *Whatman vs. Gibson.* 4 *Paige,* 510. The whole lease from Stewart taken together, shows a demise of the exclusive landing privilege, which privilege is an *easement* to protect which equity will interfere, 3 *Paige,* 254, *Hills vs. Miller.* 8 *Do.,* 351, *Baron vs. Richards.* 1 *Chancery Cases,* 38, *Miller vs. Alney.* 1 *Eq. Cases Abr.,* 27.

*Alexander Randall* and *Thomas S. Alexander* for the appellees.

There are in this lease ten or twelve instances, in which the parties to it bind themselves and their *"heirs and assigns,"* but when we come to the covenant in question the words *"heirs and assigns"* are omitted, and the language is, that George B. Stewart on *his part* covenants that *he* will not lease the land for a steamboat landing. This changing of the language shows that the intent of the parties was not to bind *assigns*, and that the covenant should remain in force only so long as Stewart remained the owner of the land. If we pass to the parol testimony we find this intent established beyond controversy. A lease was prepared, and tendered, containing this very stipulation *binding assignees*, but Stewart refused to execute it because he was unwilling to bind his *assigns*, and so informed one of the original lessees. The counsel for the appellants say, that this testimony is not admissible. Our reply is, *first*, that they should have excepted to it under the act of 1832, ch. 302, and failing to do so they are expressly prohibited by that act from raising that question in this court. Upon this point the case of *Cross vs. Cohen*, 3 *Gill*, 257, is conclusive. But secondly, we say, that even if the question was an open one here, and the evidence was properly excepted to, that it is still admissible, in opposition to an application for specific performance of a written contract. 6 *Ves.*, 328, *Marquis of Townshend vs. Stangreon*. It was admissible too to show the circumstances under which the contract was made. We say then that this order should be affirmed:

1st. Because the covenant relied on in the original lease from Stewart to Crouch and Randall, did not contain the word *"assigns,"* nor was it intended to restrain the rights of Stewart's vendees of the fee in his other lands in respect to the water-rights of any of these other lands thus conveyed in fee, but was in fact and so carefully designed to be, a *mere personal individual covenant of Stewart alone*, not extending beyond his own acts, and could not bind Gale. See the first

11      v.7

resolution in *Spencer's Case.* 16 *Ves.*, 454, *Collins vs. Plumb.* 5 *Taunt.*, 795, *Doe vs. Smith.* 18 *Eng. C. L. Rep.*, 397, *Grey vs. Cuthbertson.*

2nd. But suppose the parol testimony cannot be received, and that the word *"assigns"* was in the covenant, the question then arises, does it run with the land? It is not a covenant respecting the lands demised, but in relation to other lands, and we say it is a mere personal, collateral covenant, not running with those other lands, or binding upon Gale. Our side of the case is argued with great ability by Lord Chancellor Brougham, in the case of *Keppell vs. Bailey*, 2 *Mylne & Keene*, 517. *Sugden* in his work on *Vendors* reviews this case, and these two arguments we leave for the consideration of the court. By the 2nd resolution in *Spencer's Case*, where the covenant concerns not the thing demised, or the interest of the reversioner in the thing demised, it is collateral and does not run with the land. A distinction may be drawn between a covenant, the burden of which is cast upon the lessee and his assigns, and one cast on the lessor and his assigns. In the one cited from 3 *Wilson*, 25, the covenant bound the assigns and the suit was against the assignee of *the lessee.* The case in 5 *Barn. & Adol.*, 1, was upon a covenant to insure, and upon the special provision of a statute, and it was admitted in that case that the action would not lie at common law. The case in 17 *Eng. C. L. Rep.*, 428, was a case in which the covenant related to the *thing demised.* The case in 8 *Eng. C. L. Rep.*, 113, is commented on by *Lord Brougham*, as inconsistent with the case of *Mayor, &c., vs. Pattison*, 10 *East.*, 129, upon which we rely. These cases all relate to the liability of the assignee of *the lessee.* Now as to the liability of the assignee of the lessor; we say he is only bound by covenants relating to the thing demised. 43 *Law Lib.*, 80. In the case of *Collison vs. Lettsom*, 6 *Taunt.*, 224, a case very similar to the present, it was held that the covenant would not run with the land. Of all the cases referred to there is but one which shows that this covenant would have efficiency against the assignee of the lessor, in favor of the

assignee of the lessee, and that is the case in 17 *Wend.*, 136, but even there the action was brought against the lessor himself, and it was admitted that the point was entirely new. It can make no difference that we are the owners of both the reversion of the demised premises and of the other land also, for this fact can impose no contract upon us which we were otherwise free from. Lord Brougham, in the case of *Keppell vs. Bailey*, answers the argument as to easements, and distinguishes between them and such burdens as those imposed by this covenant; he also decides that there is no remedy in equity, and this proposition is contradicted by no authority whatever. Upon our side of this question, see also *Hardress* 87, *Cook vs. Arundel. Platt on Cov.*, 87, 473, 479, in 3 *Law Lib.*, 211, 214. 16 *Pick.*, 183, *Plymouth vs. Carver.* 2 *Blackf.*, 301, *Taylor vs. Owen. Ibid.*, 307, *Taylor vs. Moffatt.*

3rd. Such covenants as the appellant alleges this to be, are discouraged and void, being against public policy and in restraint of trade. 13 *Johns.*, 112, *Thompson vs. Davies.* 3 *John's Cases*, 29, *Jones vs. Caswell.* 5 *Halsted*, 87, *Gulick vs. Ward.* 9 *Eng. Law & Eq. Rep.*, 394, *Birminghan Railway Co., vs. Northwestern Railway Co.*

The learned counsel also argued, that the complainant had not, by sufficient evidence, shown himself to be the assignee of the lease; that the bill was defective in not making an outstanding mortgagee of Crouch and Randall a party; and that there had been no renewed lease given, and no demand for a renewal averred in the bill : but the argument on those points is omitted, because no notice is taken of them in the opinion of this court.

Le Grand, C. J., delivered the opinion of this court.

The bill in this case states, substantially, that a certain George B. Stewart being seized in fee of a large tract of land lying on West River, leased five acres of it to the firm of Crouch and Randall, to be used as a landing for steamboats and

other vessels, and for the transaction of commercial business; that besides paying a large rent, the lessees covenanted therein to make improvements, and that the lessor covenanted on his part, during the continuance of the lease, not to rent any other landing on his tract of land as a steamboat landing; that the lease was to continue five years, renewable every five years, for the period of twenty-five years; that since the lease, Stewart sold the whole tract of land in fee to the appellee, Gale, including the reversion of the part leased to Crouch and Randall. The bill then states that Gale had knowledge of the demise to Crouch and Randall, but regardless of the covenants contained in the lease, has built a wharf on this land, immediately adjoining this leasehold, and rented it to the appellee, Stranberg, as a public landing for the steamboat Champion, and avows his determination to do so. The bill prays an injunction to restrain the appellee, Gale, from renting any part of his tract of land to be used as a steamboat landing, and to restrain Stranberg from using any part of it as such.

The appellant is the assignee of Crouch and Randall.

To the bill, Gale, in his answer, replied, that the covenant contained in the lease from his grantor, Stewart, was, and in fact was intended to be, nothing more that a *personal* covenant, binding only Stewart and not his assigns.

After the coming in of the testimony which had been ordered to be taken, the court dissolved the injunction that had been granted on the filing of the bill. It is from this order of dissolution the appeal has been taken.

The covenant in the lease which gave rise to this controversy is as follows: "The said George B. Stewart on his part promises and agrees, that he will not rent or lease any other landing on his said tract of land as a public landing to any steamboat company whatsoever."

It was to the true interpretation and legal meaning of this covenant, the respective counsel of the parties addressed their ability and learning. On the part of the complainant it was contended:—1st, that it is a covenant running with the whole tract of land possessed by Stewart, of which the demised premises are a part, and as such binding on his assigns; and

2nd, that if the covenant be not of such character, still it would be a fraud, of which a court of equity would take cognizance, to allow the appellee, Gale, to build, or to authorise to be built, another steamboat wharf on the tract, he having become the owner of the whole tract, including the demised premises, with full knowledge of the equities existing between Stewart and his original lessees and their assignees.

These propositions were denied by the appellees.

In the view we have of the effect of the evidence, it is not important we should indicate what would be our opinion of the character of the contract, *per se*, between the parties, and the obligations which it legally and equitably devolved on them.

The testimony in the cause was introduced on the part of the defendant without exception to its admissibility or competency, and this brings us to the inquiry as to its effect on the interpretation which we are to place on the contract *in this case*, because of the provisions of the act of 1832, chapter 302.

It is not essential that we should review all the evidence, and we shall therefore confine ourselves to that part of it which bears directly on the question of the interpretation of the covenant. Thomas M. Crouch, one of the original lessees, testifies, " that a paper shown to him was intended for the lease, 'but not executed for certain reasons;' that one of the principal reasons will show itself on the bottom of the paper. *He required Stewart to put a covenant in it binding himself, his heirs and assigns, to give himself and his partner the exclusive steamboat privilege for the whole land during the term of the lease.* That was the reason why it was not executed. Stewart afterwards agreed to insert the said covenant for *himself*, provided deponent would give a bond for the keeping in order of the road from the Quaker burying-ground to the landing, which deponent thinks is in the deed as executed. *Stewart stated as a reason why he would not do so, was, that in case he should sell his property, which he then had no intention of doing, it would depreciate this property and be considered as an incumbrance.*"

George B. Stewart testifies, that he had seen the paper, (the original *draft* of the lease, and referred to in the testimony of

Crouch,) and that it "was submitted to witness by Mr. Crouch. Witness had several objections to it, which the paper shows. The object was to lease the property now in controversy. Does not remember the objections, but the other lease which was recorded was taken from the draft now shown him:—a copy with alterations, the objectionable features of the draft being removed from the copy." On reference to the copy of this original draft, and on comparison of it with the lease actually executed, it will be seen that the words *"heirs and assigns"* were erased, and the lease executed without them.

From these circumstances it is clear, that the original lessor refused to bind his heirs or assigns, and communicated a knowledge of this indisposition to one of his lessees, and that the agreement was, that the obligation should only be *personal* in its character and in nowise binding his *heirs or assigns.*

But it is said that these facts can have no influence in the decision of this cause, because to allow them any would be to violate a well established principle of the law of evidence, which prohibits the introduction of parol evidence to contradict or vary a written instrument. There is no difference of opinion as to the principle; but the question here is, whether the act of 1832, chapter 302, in the absence of objection made in the court below, does not, in *the particular case,* modify and control it? The fifth section of that act provides: "That hereafter, in all causes in the court of chancery or any county court, as a court of equity, ALL OBJECTION to the competency of witnesses and *the admissibility of evidence,* and to the sufficiency of the averments of the bill or petition, shall be made by exceptions filed in the cause, and *no point relating to* the competency of witnesses or the *admissibility of evidence,* or sufficiency of the averments of the bill or petition, *shall be raised in such causes in the Court of Appeals,* or *noticed* or *determined,* or *acted upon by the Court of Appeals,* unless it shall plainly appear in the record, that such point had been raised by exceptions, as aforesaid, in said court of chancery or county court," &c.

The language of the act is very full and explicit. It is, that *"all objections"* to "the *admissibility of evidence"* shall be made in the court below; and further, that *"no point"* relat-

ing to the admissibility of evidence "shall be *raised*" in the Court of Appeals, or "*noticed* or *determined* or *acted* upon by the Court of Appeals."

An objection to the *admissibility* of evidence in any cause can only be properly founded on the hypothesis, that such testimony violates the law of evidence in this, that the law prohibits the proof in the manner proposed of the particular fact, or of its irrelevancy to the subject matter of inquiry.　In the case now before us, it cannot be contended that the testimony was irrelevant to the subject of investigation, for it is to that, and to nothing else, it applies.　The objection, therefore, must rest upon the principle, that it is incompetent, in the mode resorted to, to prove what the evidence was adduced to establish.　The only objection to the introduction of parol evidence in any case, is that which the law creates, and is no more binding than any other principle of law.　Like any other rule of evidence, it is subject to the power of the legislature to abolish or modify it in every case, or to modify or annul it under particular circumstances.　We think this has been done by the act of 1832, where the objection has not been taken in the court below.　It is not our province to determine the expediency of such legislation; that is a matter confided to another and independent branch of the State government.

It was ingeniously argued by the counsel for the appellant, that although he could not in this court object to the *admissibility* of the evidence, nevertheless, he had the right to insist it should not be considered in the decision of the case.　In this view we cannot concur.　If the testimony be in the cause, it must be considered and allowed its full force, and this has been the uniform decision of the Court of Appeals under the act of 1832.　The cases of *Cross vs. Cohen*, 3 *Gill*, 269; *Sindall and Wife vs. Campbell*, 7 *Gill*, 76 ; *Jones vs. Hardesty*, 10 *Gill & Johnson*, 419; *Trump vs. Baltzell*, 3 *Md. Rep.*, 304; *Clagett & Hill, vs. Hall*, 9 *Gill & Johns.*, 91; *Duncan vs. Maryland Savings Institution*, 10 *Gill & Johns.*, 299; are sufficient to establish this.

Holding, that by the testimony it is manifest the contract was as it is represented in the answer of the defendant, Gale,

and thinking we are bound under the act of 1832 to give it full effect, we accordingly affirm the action of the court below, without determining what would have been our opinion of the proper construction of the particular covenant, had it been submitted to our judgment free from the influence of the parol proof.

*Order affirmed.*