## COUNTY OF PROVIDENCE, SEPTEMBER TERM, 1855, AT PROVIDENCE.

PRESENT:

HON. WILLIAM R. STAPLES, CHIEF JUSTICE.
HON. GEORGE A. BRAYTON, ⎫ JUSTICES.
HON. ALFRED BOSWORTH, ⎭

---

## ROBERT H. IVES *v.* CHARLES T. HAZARD & others.

Though to entitle one of the parties to a contract to a specific performance, the assent of both to the terms of the contract must be proved, the note or memorandum of the contract, to comply with the statute of frauds of Rhode Island, need be signed only by the party sought to be charged.

The words, " I *agree* to sell," &c., in a contract for the sale of land, import a concluded agreement, and not a mere offer to sell.

That the contract was mutual may be proved *aliunde* the memorandum.

The mutuality of remedy required for specific performance need not exist prior to the filing of the bill, and is a consequence of it.

Allegations in the answer of surprise, or importing a condition into the contract not mentioned in the memorandum, are not responsive to a bill setting forth the contract as stated in the memorandum, and must be proved independently of the answer.

A memorandum to comply with the statute of frauds need contain only the substance of the contract, and not a detail of all particulars; so that if the memorandum recognize that an estate chargeable with certain annuities is sold subject to them, by mentioning when the payment of the annuities by the purchaser is to begin, it is sufficient.

If all mention of such charge were omitted from the memorandum, yet if the purchaser

files his bill admitting his agreement to bear it, the omission of such a term of the contract in the memorandum is no defence to the vendee against specific performance.

The following memorandum, "Mem. 28th of May 1852. I agree to sell R. H. Ives the Peckham farm, now owned and occupied by me, say about 45 acres, in Newport, for fifteen thousand dollars, (15,000,) payable the 25th of March, when possession is to be given; he, R. H. I., paying the annuity for December 1852," held sufficiently certain to support a bill for specific performance against the vendor signing it.

BILL IN EQUITY, for specific performance. In November, 1851, the complainant, who was the owner of a house and several acres of land on the Cliffs at Newport, authorized the principal defendant, Hazard, as his agent, to offer for the Peckham farm, of about forty-five acres, adjoining the land of the complainant, the sum of $10,000; the respondent, Hazard, saying, that " he thought he could buy it cheaper than any other man; but that he did not think that he could get it for that price, still he would offer." On the 8th of November, 1851, Hazard purchased the farm of Mr. and Mrs. Peckham, for the sum of $10,500, taking a deed of the same (subject to certain annuities imposed upon it by the father of a former husband of Mrs. Peckham) to himself. In the following May, Hazard, who resided in Newport, called upon the complainant, at his counting-house, in Providence, between the hours of 9 and 10 o'clock, on the 28th of that month, and informed him that he had purchased the land in question, without mentioning the price which he had agreed to give for it. The complainant expressed his surprise that before purchasing the property, Hazard had not communicated with him, so that he might increase his offer for it if he thought proper. A conversation of some half hour's duration then ensued, in which the complainant expressed his desire to buy the property of Hazard, asking him to fix a price, the latter objecting to sell the whole unless he got a good price, on account of the wishes of his wife to the contrary, and offering to sell a part, but in this conversation no price was named, and the parties separated without coming to any bargain. On the same day the defendant, Hazard, came again to the counting room of the complainant, when another conversation concerning the same subject, of about the same duration, ensued, in the course of which the complainant urged Hazard to name a price for the land; who, after hesitating a moment or two,

said : " If I sell you this land, I must have $15,000 for it;" and upon the complainant's asking him, "if these were his lowest terms," replied : " They are for the whole tract, but I will sell a part of it at a less rate ; but if I sell you the whole, you must pay me $15,000 for it." At this point of the negotiation, Hazard, looking at the clock, or taking out his watch, said, " I have just time to get to the boat," meaning the steamer to Newport ; when he left the counting-room, followed by the complainant, who in less than half an hour returned with the following memorandum, written in pencil, in his memorandum book, the body of which was in his handwriting, but which was signed, in pencil, by Hazard :—

" Mem. 28th May, 1852. I agree to sell R. H. Ives, the Peckham farm, now occupied and owned by me, say about 45 acres, in Newport, for the sum of fifteen thousand dollars, ($15,000,) payable 25th March, 1853, when possession is to be given. He, R. H. I., paying the annuity for December, 1852.

(Signed) " CHARLES T. HAZARD."

A few days afterward, the complainant received from Hazard the following letter, dated June 2, 1852, in which, after stating that as agent for the complainant, he had purchased another piece of land adjoining, and the terms of the purchase, he continues :—

" I am sorry to say, when I told my wife what arrangement I had made with you respecting the Peckham farm, she at once told me she would not consent to sell the whole of it. I thought I was doing what was for the best at the time, but she says she has been moved about from place to place, and has been to the trouble of furnishing the house and has got settled, she should not be willing to break all up and move again. I told her you said we could hire the place, but she would not consent to that, and said she would not sign a deed of the whole of it ; but was willing and wanted to sell a part of it, which would be the south part, at a very low price. You will recollect I repeated it a number of times, that she did not want to sell the whole but a part, and I did not know what my folks would say if I put a price on the whole of it. As the thing has taken the course it has, I think it would be well if you could come down

and talk the case over with her yourself. If you can get her willing, I am ready to go on as we talked. Under the circumstances, she says she should be willing to sell the south part, running on a straight line with the north end of the Armstrong lot, east and west, for the low price of $550 per acre, making about 18 acres. I may be in Providence on Saturday on business.                     Yours respectfully,

(Signed)         ·   " CHARLES T. HAZARD."

It was also proved by the admissions of the respondent, Hazard, that the complainant had agreed orally with him to take the farm named in the memorandum at the price therein named, but that he did not mean to convey the land to the complainant at the stipulated time, on account of the refusal by his wife to release her dower in the same, claiming that his wife's consent and release of her dower was a condition of his contract with the complainant.

The matter remained in this position until the 21st day of September, 1852, when the complainant having previously learned that the respondent, Hazard, had, in violation of his contract with. him, sold or contracted to sell portions of the bargained farm to Henry A. Middleton, Esq., and Mumford Hazard, a brother of Charles T., filed his bill in the supreme court for the county of Newport against the three, praying that Charles T. Hazard might be compelled specifically to perform his contract with the complainant—an allowance to be made out of the stipulated price for the value of the wife's dower, if she should persist in refusing to release the same—and for an injunction against any conveyance by him to the other respondents, or any payment by them of any consideration therefor to Hazard, &c., &c. The bill was accompanied by a petition for special injunction against conveyance and payment as aforesaid, which was, on the 2d day of October, 1852, after hearing, granted by the Hon. Richard W. Greene, then Chief Justice, at Chambers, the injunction to continue until the hearing and further order. Before the hearing, an agreement was entered into between the complainant and Mumford Hazard, by virtue of which the latter, who had made improvements on the portion purchased by him by contract of his

2 *

brother, Charles T., wa,s, upon certain terms, to take a title from the complainant, if the latter succeeded in establishing his claim against the said Charles T., which removed that portioh of the controversy. It appeared also that Middleton had never received a deed from Hazard of the portion of the premises stipulated to be conveyed to him, but that the deed from Hazard to him had been placed in the hands of the Hon. Henry Y. Cranston, to be delivered over to Middleton when the consideration therefor should be paid by him ; and in this state of the matter further action was arrested by the filing of the bill and the special injunction above mentioned.

By agreement, the cause was removed for trial and decision to the County of Providence, where, after having been brought to an issue and the proofs taken, it was heard orally by the court at the March Term, 1854. Before the case was decided, the then Chief Justice, Hon. R. W. Greene, resigned, and Mr. Justice Haile died, whereupon, at the September Term, 1855, it was submitted, upon printed arguments, to the court as newly constituted by the intermediate appointment of Hon. Wm. R. Staples as Chief Justice, and of the Hon. Alfred Bosworth as a Justice of the Court.

*Binney, Payne,* and *Ames* for the complainant, made the following points and submitted the following authorities :—

1st. That in the exercise of its ancient jurisdiction in enforcing the specific performance of contracts, where a contract in respect to real property is in its nature and circumstances unobjectionable, it is as much a matter of course for a court of equity to decree a specific performance of it as it is for a court of law to give damages for the breach of it. 1 Spence Eq. Jurisd. 645. 2 Story Eq. Jurisp. §§ 716, 751. 1 Sugd. Vend. 235, and notes. *White* v. *Damon,* 7 Ves. 35. *Hall.* v. *Warren,* 9 Ves. 605, 606. *Rogers* v. *Saunders,* 16 Maine, 92. Batten on Specific Perf. 8.

2d. That "surprise," in the sense of a court of equity, presupposes "some undue advantage taken of a party under circumstances that mislead," 1 Story Eq. Jurisp. § 250 and notes ; and that mere inadequacy of price.is not a sufficient ground for a court of equity to refuse its assistance to a purchaser ; and

especially if it arise from a change of value after the contract. 1 Sugd. Vend. 235, 236, 310, 311. *Coles* v. *Trecothick*, 9 Ves. 246. *Sullivan* v. *Jacob*, 1 Molloy, 477. *Underhill* v. *Korwood*, 10 Ves. 219. *Brown* v. *Cooper*, 2 Hare, 408, 411. *Cathcart* v. *Robinson*, 5 Peters, 271. *Low* v. *Treadwell*, 3 Fairf. 450, 452. That the fraud, or surprise in the nature of it, was in this case all on the other side, since " if an agent who is employed to purchase for another purchases in his own name, or for his own account, he will be held to be a trustee of the principal at the option of the other." 1 Story Eq. Jurisp. §§ 316, 316 *a*. 2 Ib. § 1211 *a*. A man cannot plead ignorance of what he has signed, when no fraud has been practised upon him, and his ignorance proceeds from carelessness or wilfulness. Batten on Specific Perf. 35, 36. *Duke of Beaufort* v. *Neeld*, 12 Cl. & Fin. 248.

3d. That the memorandum in this case is sufficient under the statute of frauds. It is in *writing*, though in *pencil; Clason* v. *Bailey*, 14 Johns. Rep. 491 ; it is certain and full enough; Ib. *Hawkins* v. *Chase*, 19 Pick. 502. *Atwood* v. *Cobb*, 16 Pick. 230 ; and there being no fraud or mistake in the equitable sense, even if a term be omitted from the memorandum which the plaintiff in his bill states and submits to, the omission can be no objection to a specific performance. *Martin* v. *Pycroft*, 15 Eng. Law & Eq. R. 378. *London & Birmingham Railway Co.* v. *Winter*, 1 Cr. & Ph. 57. It expresses the *consideration* of the contract to be enforced, to wit, the $15,000, which must be distinguished from the *mutuality* of the contract, or the other party's assent to it, which it need not express. Smith on Contracts, 90, and note. *Laythoarp* v. *Bryant*, 2 Bingh. N. C. 735. S. C. 29 Eng. C. L. 469. *Lent* v. *Padelford*, 10 Mass. 236. *Atwood* v. Cobb, 16 Pick. 231. *Bean* v. *Burbank*, 4 Shepley, 458. It is signed *in the beginning* of the contract by Ives, with his own hand, which is sufficient even if his signature were required. 1 Sugd. Vend. 127. *Knight* v. *Crockford*, 1 Esp. 190. *Clason* v. *Bailey*, 14 Johns. Rep. 484. *Bleakley* v. *Smith*, 11 Simons, 150 ; but it is not required, it being sufficient by all the authorities, as well as by the words of the statute of frauds, if signed as this is admitted to be, by the party to be charged. 1 Sugd. Vend. 112,

113, 115, 118, note and cases. *Laythoarp* v. *Bryant,* sup. *Hatton* v. *Grey,* 2 Chan. Cas. 164. S. C. 1 Eq. Cas. Abr. 21. *Fowle* v. *Freeman,* 9 Ves. 351. *Seton* v. *Slade,* 9 Ves. 275. *Clason* v. *Bailey,* 14 Johns. Rep. 488. *Gale* v. *Nixon,* 6 Cowen, 445. *L'Amoreux* v. *Gould,* 3 Selden, 349. *Lent* v. *Padelford,* 10 Mass. 236. *Atwood* v. *Cobb,* 16 Pick. 232. *Rogers* v. *Saunders,* 16 Maine, 97. *Bean* v. *Burbank,* 4 Shepl. 488. *Dowell* v. *Dow,* 1 Y. & C. 355. *Flight* v. *Bolland,* 4 Russ. 298.

4th. The mutuality of remedy required by a court of equity need not exist at the time of contract; it is sufficient if it exist when the case is brought before it for decision. Batten on Specific Perf. 62. 1 Sugd. Vend. 241, 242, 246. 2 Story Eq. Jurisp. § 736. *Flight* v. *Bolland,* 4 Russ. 298. *Hoggart* v. *Scott,* 1 Russ. & Mylne, 293. *Dowell* v. *Dow,* 1 Y. & C. 355. *Salisbury* v. *Hatcher,* 2 Y. & C. 64. *Moore* v. *Campbell,* 26 Eng. Law & Eq. R. 525. *Clason* v. *Bailey,* 14 Johns. Rep. 489, and cases. *Rogers* v. *Saunders,* 16 Maine, 92. *Matter of Jane Hunter,* 1 Edw. Ch. R. 1. *Telfair* v. *Telfair,* 2 Dessau. Ch. R. 271.

5th. Hazard's answer setting up facts in avoidance of the contract admitted by him to have been by him signed is not responsive to the bill, and must be independently proved. 2 Danl. Ch. Pract. 984, and note. *Rogers* v. *Saunders,* sup. *Lovett* v. *Demarest,* 2 Halst. Ch. R. 113. *Jones* v. *Belt,* 2 Gill (Md.) R. 122, 123; and if it were responsive, the paper would be sufficient to control it. *Jones* v. *Belt,* sup.

6th. The complainant is entitled to a specific performance, with compensation out of the purchase-money for the value of Mrs. Hazard's right of dower, if she should refuse to release it. 1 Spence Eq. Jurisd. 645, n. *b.* 1 Sugd. Vend. 342, 345, 347, 350, 351, 353, 359, and note. 2 Story Eq. Jurisp. 779, and note. *Waters* v. *Travis,* 9 Johns. Rep. 450. *Moss* v. *Elmendorf,* 11 Paige, 277. *Voorhees* v. *Demayer,* 2 Barb. Sup. Ct. R. 37. *Allerton* v. *Johnson,* 2 Sandf. Ch. R. 72. *Whiswell* v. *Hall,* 3 Paige, 314. *Jones* v. *Belt,* 2 Gill (Md.) R. 106. *Jopling* v. *Dowley,* 1 Yerger, 289.

7th. As to Middleton, if he had not notice, which he had, since he has paid nothing, and has not got the legal title, our title, being prior, is better; we being, from the time of the con-

tract, the equitable owners of the land contracted to be conveyed to us. 2 Story Eq. Jurisp. §§ 788, 789, 790. Batten on Specific Perf. 330, 331. 1 Spence Eq. Jurisd. 647, note and cases. *Taylor* v. *Stibbert*, 2 Ves. 439. *Seton* v. *Slade*, 7 Ves. 265. *Meux* v. *Maltby*, 2 Swanst. 277. *Potter* v. *Saunders*, 6 Hare, 1. *Linscott* v. *Buck*, 33 Maine, 530. *In matter of Jane Hunter*, 1 Edw. Ch. R. 1. *Toll-bridge Co.* v. *Vreeland*, 3 Green. Ch. R. 157. *Hines* v. *Barnes*, 1 Sm. & Marsh. Ch. R. 530.

*Wm. H. Potter*, *H. Y. Cranston*, and *Albert C. Greene* for the defendants, made the following points and submitted the following authorities:—

1st. That the memorandum produced shows a mere offer or proposal on the part of the respondent, Hazard, and not a contract, to sell, and so is not binding. Chit. on Contracts, 9. *Stratford* v. *Bosworth*, 2 V. & B. 341. *Huddlestone* v. *Briscoe*, 11 Ves. 583, 591. *Kennedy* v. *Lee*, 3 Mer. 440, 449, 450. *Holland* v. *Eyre*, 2 Sim. & Stu. 194. *Tucker* v. *Woods*, 12 Johns. Rep. 190. *Frith* v. *Lawrence*, 1 Paige, 434, 441, 442, 443. *Carr* v. *Duval*, 14 Peters, 77. It does not express the assent of the complainant, which is necessary to make it a contract. Chit. on Contracts, 9, 73. Parsons on Contracts, 399, 400, 401, and notes. *Bruce* v. *Pearson*, 3 Johns. Rep. 534. *Greene* v. *Bateman*, 2 W. & M. 359. *Johnson* v. *Fenner*, 7 Watts, 48. No consideration moving from the complainant to the defendant is expressed in it, and there being no engagement by the complainant *at the time*, the respondent's promise was void for want of consideration. Chit. on Contracts, 15, 16, 46, 63. Parsons, 373, 374, 375, 376. *Livingston* v. *Rogers*, 1 Caines Rep. 583. *Wood* v. *Edwards*, 19 Johns. 205. *Hayes* v. *Warner*, 2 Stra. *Cook* v. *Oxley*, 3 D. & E. 653. *Bean* v. *Burbank*, 4 Shepl. 458. *Lees* v. *Whitcomb*, 5 Bingh. 34. S. C. 15 Eng. C. L. R. 356, 357, 358. *Sykes* v. *Dixon*, 9 Ad. & El. 463. S. C. 36 Eng. C. L. R. 246. *Jordan* v. *Norton*, 4 Mees. & Welsb. 155. *People* v. *Shall*, 9 Cowen, 779. *Haskell* v. *Patrick*, 3 Johns. Rep. 528. *Burnet* v. *Bisco*, 4 Johns. Rep. 235. *Livingston* v. *Tremper*, Ib. 416. *Mac. & Brist. Plank R. Co.* v. *Snediken*, 18 Barb. Sup. Ct. R. 318, 319. *Dorsey* v. *Packwood*, 12 Howard, 126. *Gov. & Co. of Copper Miners* v. *Fox, et al.* 3 Eng. Law & Eq. 420.

3d. The memorandum is not sufficient under the statute of frauds, because it does not express the assent of Mr. Ives, and does not express the consideration of the contract. Chit. on Contracts, 65. *Sears* v. *Brink*, 3 Johns. Rep. 211. *Smith* v. *Ives*, 15 Wend. R. 182. *Wain* v. *Warlters*, 5 East, 10. *Laythoarp* v. *Bryant*, 2 Bing. N. C. 742. *Hanes* v. *Armstrong*, 1 Bing. N. C. 751. *Saunders* v. *Wakefield*, 4 B. & A. 595. *Richards* v. *Porter*, 6 B. & C. 433.

4th. The defendant did not intend or understand the memorandum to bind him as a contract, as appears by his answer which is responsive in this respect. 2 Dan. Ch. Pract. 821, notes and cases, 830 to 839, and notes. Story Eq. Pl. §§ 852 to 855. 5 Johns. Ch. R. 247. *Method. Episc. Ch.* v. *Jacques*, 1 Johns. Ch. R. 65, 75, 76. *Mountford* v. *Taylor*, 6 Ves. 791. 3 Greenl. on Evid. § 285. *Bright* v. *Haggin*, Hardin R. 356. *Cowman & Glenn* v. *Hall*, 3 Gill & Johns. (Md.) R. 398. *Woodcock* v. *Bennett*, 1 Cowen, 711. *Dunham* v. *Jackson*, 6 Wend. R. 22. *Clark* v. *Smith*, 4 Paige, 368. *Mills* v. *Gore*, 20 Pick. 28, and must avail the defendant unless overcome by two witnesses, or by one and circumstances which supply the want of another. 3 Greenl. Evid. §§ 282, 284, 289. *Carpenter* v. *Prov. Wash. Ins. Co.* 4 Howard, 185. *Clark's Ex'r* v. *Van Reimsdyk*, 9 Cranch, 153. 1 Wash. C. C. R. 230. 1 Mason, C. C. R. 514. *Dinsmoor* v. *Hazleton*, 2 Foster (N. H.) R. 535. *Buttrick* v. *Holden et al.* 13 Metc. R. 357. 2 Danl. Ch. Pract. 984, n.

5th. As specific performance rests in the *discretion* of the court, (*Seymour* v. *Delancey*, 3 Cowen, 445; 6 Johns. Ch. R. 222,) and the consequence of refusing it will be merely to leave the parties to the remedy at law, (*Jackson* v. *Ashton*, 11 Peters, 229,) the court will refuse it unless the claim is reasonable and just, the contract equal in all its parts, founded upon adequate consideration, and its terms clear and definite, and mutually understood. *Waters* v. *Howard*, 8 Gill (Md.) R. 262. 4 Scammon, R. 202. *Modisett* v. *Johnson*, 2 Blackf. 431. *Rodman* v. *Zilley*, Saxton Ch. R. 320. *Kendall* v. *Alamy*, 2 Sumn. C. C. R. 278. *Colson* v. *Thompson*, 2 Wheat. 336. *Welton* v. *Correlson*, 1 McLean, C. C. R. 120. *Graham* v. *Cole*, 5 Munf. R. 396. *Norfleet* v. *Southall*, 3 Ib. 189. *Rockwell* v. *Lawrence*, 2 Hall

Ch. 190.   *Aday* v. *Echols,* 18 Ala. 353.   *Tatham* v. *Platt,* 15 Eng. Law & Eq. 190.   *Shepherd* v. *Shepherd,* 1 Maryl. Ch. Dec. 244.   *Beard* v. *Linthicum,* Ib. 345.   *Smith* v. *Burnham,* 3 Sumn. R. 463.   *Parish* v. *Koons,* 1 Parsons (Penn.) R. 7, 94, 95, 96. *Gov. &c.* v. *Petch,* 28 Eng. Law & Eq. 470.   The court will not decree a *hard* bargain.   *King & others* v. *Hamilton & others,* 4 Peters, 311.   *Henderson* v. *Hays,* 2 Watts, 148; 2 Atk. 133. *Joynes* v. *Statham,* 3 Atk. 388.   *Carbery* v. *Janehill,* 1 Har. & Johns. 224.   *Ellis* v. *Burden,* 1 Ala. 458.   *Leigh* v. *Crump,* 1 Iredell, Ch. R. 299; 3 Barb. Sup. Ct. R. 55.   Nor where there has been a change of circumstances; 2 Story Eq. Jurisp. § 749. *Brashier* v. *Gratz,* 6 Wheat. 528.   *Taylor* v. *Longworth,* 14 Peters, 172.   *Perkins* v. *Wright,* 3 Har. & McHen. 324.   4 Scammon, 267.   3 Mer. 441.   2 V. & B. 341.   11 Ves. 583, 591. 1 Paige, 434.   *Eliason* v. *Henshaw,* 1 Peters, 445, 464.   Nor where it is doubtful if both parties understood the contract alike. *Coles* v. *Browne,* 10 Paige, 534.   *Boston & Maine R. R.* v. *Babcock,* 3 Cush. 228, 232.   Nor where the terms of the written agreement are so ambiguous that adopting one construction, they may reasonably be supposed to have an effect which the defendant did not contemplate.   71 Law Lib. 551, and cases cited.   *Claverley* v. *Williams,* 1 Ves. 210.   *Higginson* v. *Clowes,* 15 Ves. 516, 523..   Nor will the court enforce a contract obtained by surprise.   1 Story, Eq. Jurisp. § 120, n.   *Marquis of Townshend* v. *Stangroom,* 6 Ves. 327.   *Twining* v. *Morrice,* 2 Bro. C. C. 325.   *Evans* v. *Lewellin,* 1 Cox, Ch. R. 332.   *Willan* v. *Willan,* 16 Ves. 72, 81, 87.   *Matthews* v. *Terwilliger,* 3 Barb. Sup. Ct. R. 50.   Nor will the court decree a specific performance where, as here, there is a variance between the agreement set up in the bill and the agreement produced in proof.   1 Danl. Ch. Pract. 436.   *Colson* v. *Thompson,* 2 Wheat. 336.   4 Scammon, 268.   10 Paige, 535, 536.   6 Ves. 340.   *Mendorf & wife* v. *Kilburn et al.* 4 Miller (Md.) Rep. 459.   *Parish* v. *Koons,* 1 Parsons R. 97.   Nor will the court decree a specific performance unless there be mutuality of remedy as well as mutuality of contract.   *McMurtrie* v. *Bennette,* Harrington (Mich.) Ch. R. 124.   Parsons on Contracts, 374, n.   *Lawrence* v. *Butler,* 1 Sch. & Lef. 13.   *Hammett* v. *Yielding,* 2 Ib. 548.   *Hawkins* v. *Holmes,*

1 P. Wms. 770. *Bromley* v. *Jeffries,* 2 Vern. 415. *Adderley* v. *Dixon,* 1 Sim. & Stu. 607. *Howell* v. *George,* 1 Madd. R. 1. *Benedict* v. *Lynch,* 1 Johns. Ch. R. 369, 379. *McWhorter* v. *McMahan,* 1 Clark (N. Y.) Ch. R. 405. *German* v. *Machin,* 6 Paige, 288. *Stoddert* v. *Bowie's Ex'r,* 5 Miller (Md.) R. 35. *Parish* v. *Koons,* 1 Parsons, 79. *Dorsey* v. *Packwood,* 12 Howard, 126. *Woodward* v. *Harris,* 2 Barb. Sup. Ct. R. 439. *Jacobs* v. *Peterborough & Shirley R. R. Co.* 8 Cush. 223. *Sayson* v. *Watts,* 1 Md. Ch. Dec. 13. Batten on Specific Perf. 60. *Beard* v. *Linthicum,* 1 Md. Ch. Dec. 345. *Duval* v. *Myers,* 2 Ib. 401. *City of Providence* v. *St. John's Lodge,* 2 R. I. Rep. 46. The writing by Ives of his name in the memorandum was no signature of the same by him. 1 Sugd. Vend. 118, 129. *Simms* v. *Killian,* 12 Iredell R. 253. *Catlin* v. *Ware,* 9 Mass. 218. *Lufkin* v. *Curtis,* 13 Mass. 223. *Bruce* v. *Wood,* 1 Metc. 542. *Powell et ux.* v. *Monson & Bromfield Manufac. Co.* 3 Mason, 347. *Agricultural Bank of Mississippi et al.* v. *Rice et al.* 4 Howard, 225, 241. Equity will not compel the husband to procure the wife to join him in a conveyance. 2 Story Eq. Jurisp. §§ 732, 734, 735. 1 Sugd. Vend. 231, 232, 233. *Innes* v. *Jackson,* 16 Ves. 367. *Howell* v. *George,* 1 Madd. R. 9. *Clark* v. *Sevier,* 7 Watts, 107. Nor, since the purchaser knew of the limited interest of the vendor, will it compel him to convey with compensation for the value of his wife's dower. *Harnett* v. *Fielding,* 2 Sch. & Lef. 549. *Mortlock* v. *Buller,* 10 Ves. 292, 304, 305. As the delivery of the deed and the payment of the consideration are by contract to be concurrent, there should have been payment or tender of the latter to enable the purchaser to maintain a bill for specific performance. *Bank of Columbia* v. *Hagner,* 1 Peters, 455. *Doyle* v. *Teas,* 4 Scammon, 267, 268. *Wells* v. *Smith,* 7 Paige, 22. *Jennings* v. *Camp,* 13 Johns. Rep. 94. *Robb* v. *Montgomery,* 20 Ib. 15. *Parker* v. *Parmele,* Ib. 130. *Fuller* v. *Hubbard,* 6 Conn. Rep. 13. *Brown* v. *Gannon,* 14 Maine, 276.

As to the respondent, Middleton, the rumor, a knowledge of which is admitted by him in his answer, is not notice to affect his title under his contract with his co-defendant, Hazard. *Hine* v. *Dodd,* 2 Atk. 175. *Buttrick* v. *Holden et al.* 13 Metc. 355. *Flagg* v. *Mann,* 2 Sumn. 551. *Barnhart* v. *Greenshields,* 28

Eng. Law & Eq. Rep. 77, 84. *Harris* v. *Arnold*, 1 R. I. Rep. 125.

BOSWORTH, J. This case arises on a bill in equity, for a specific performance of a contract, the note or memorandum of which is in the following words, viz:—

*Mem.* 28th of May, 1852.

I agree to sell R. H. Ives the Peckham farm, now owned and occupied by me, say about 45 acres, in Newport, for fifteen thousand dollars, (15,000,) payable the 25th of March, when possession is to be given. He, R. H. I., paying the annuity for December, 1852.

The bill sets out, that the said Charles T. Hazard, being seized and possessed of the farm in question, on the 25th day of May, 1852, in consideration that the said R. H. Ives would pay him therefor, the sum of fifteen thousand dollars on the 25th of March, 1853, and would pay certain annuities, charged upon said estate, falling due and payable in December, 1852, and would also assume the future payment of said annuities so charged upon said estate, and would pay the same whenever and as they should become due and payable, contracted and agreed with the said Ives to sell him the said farm, to make to him a good title in fee simple, and give him possession on the 25th of March, 1853 ; the title and possession, however, to be subject to the annuities which are a charge upon the estate. The bill avers, that the said contract was, on the same day, reduced to writing and signed by the said Charles T. Hazard ; and annexes a copy of the alleged contract, which is the note or memorandum above set forth.

The answer unequivocally denies the same ; and the respondent avers therein, that he never *so* contracted, and denies that the aforesaid contract and agreement of said Charles T. Hazard, &c., was reduced to writing and then signed by him. It then states in detail the particulars of an alleged interview, between the complainant and said respondent, in which the said Ives asked for a price of the Peckham farm, and the said Hazard expressed an unwillingness and a refusal to sell the whole of the Peckham farm, but that he was willing to sell a part of it ; that he did say to the complainant, that if he was going to sell

the whole of it, he should ask $15,000 for it. The answer admits the signing of his name in pencil in said book, as and for a memorandum of the talk between the parties; sets up that he wrote his name mechanically, without reading the memorandum, and without knowing what it contained; alleges haste and confusion, and want of opportunity to read it; and asserts, that whatever understanding there was between the parties, was intended and expressed by the said Hazard, to be upon the contingency that it was approved of, and agreed to, by his wife. The answer also sets up the statute of frauds.

The first question to which we turn our attention, in the consideration of this case is, as to whether there is evidence in the case proving a contract, or some note or memorandum thereof, in writing, signed by the party here charged, for the sale of the land in question ? Upon examination of the memorandum produced, and the proofs of its execution, we find an agreement in writing, signed by Charles T. Hazard, to sell the Peckham farm owned and occupied by Hazard, containing about 45 acres, for a valid consideration expressed, the time when payment is to be made, and when possession is to be given, being definitely fixed. The execution of this instrument, we think, is conclusively proved.

This we deem a sufficient note or memorandum of an agreement to sell the land in question, to authorize the bringing of an action, in compliance with the restrictive terms of the statute of frauds. That statute enacts that, " No action shall be brought upon any contract for the sale of land, unless the promise or agreement upon which such action is brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some person by him thereto lawfully authorized.".

Now there is here proved a contract, or memorandum of a contract, in writing, which is signed by the party here sought to be charged therewith. It is objected that the memorandum is not signed by the other party to the contract; but we do not deem it necessary that it should be signed otherwise than by the party to be charged therewith. Ordinarily, in matters not affected by the statute of frauds, a contract, if it be proved,

must be held binding on both parties, though it be not in writing or signed by either party. In reference to a contract for the sale of land, the statute requires, that it shall be in writing, and signed by the *party to be charged therewith*, in order to authorize an action upon it. This is all that the statute requires. Authorities are cited to support the proposition that it is not necessary that both parties should sign the contract. 1 Sugd. Vend. 112, 113, 114. *Laythoarp* v. *Bryant*, 2 Bingh. N. C. 735. S. C. 29 Eng. Com. Law Rep. 469. But the point does not need to be sustained by authorities. The statute plainly does not require it.

The counsel for the respondent contend that the words of the memorandum import an offer to sell, and nothing more. We think the language imports an agreement to sell. The language is, " I agree to sell ; " the consideration is expressed, and the time when possession is to be given is fixed by the memorandum. The mention of the time when possession is to be given, and when the price of the land is payable, indicates that the parties deemed the agreement a concluded one. The acceptance of the contract on the part of the other party, is perhaps implied, by the use of the term " agree," in the memorandum by the defendant; for in order to make an agreement, the assent of two parties is necessary. But we do not deem it necessary that the assent of both parties should appear on the face of the instrument, any further than that the writing should import a contract between the parties, and be signed by the party to be charged therewith. It is in proof, that the complainant agreed to take the land, at the price named in the agreement. This, we think, upon well-settled principles, may be proved, *aliunde* the instrument. The contract was therefore mutual.

The respondent objects that there was no consideration expressed in the instrument, moving from the complainant to the defendant. A promise without consideration, or a nude fact, is void. We do not understand this promise to be of that character. The defendant agrees with the plaintiff to sell the land in question for the sum of fifteen thousand dollars, the said sum to be paid on the 25th of March, when possession is to be given. True, no consideration had passed from the plaintiff to the de-

fendant; neither had the land, which was the subject of the agreement, passed. The consideration for the agreement to sell the land for $15,000, was the agreement of the other party to buy it for $15,000; and the agreement was thus mutual. The plaintiff cannot have the enforcement of the contract, without the payment of the sum which was the consideration moving the defendant to make the agreement.

It is no objection that the defendant had not the power to enforce the contract at the time it was made. If he had chosen to have that power he might have obtained it, or refused to give such power to the plaintiff. The statute of frauds requires, that to give a party power to bring an action upon a contract, for the sale of land, he must have the contract, or some note or memorandum of it, in writing, and signed by the party to be charged. If the defendant had chosen to have his remedy or his right to enforce the contract by action, he should have obtained this requisite wherewith to charge the complainant, as he gave it to the plaintiff whereby he made himself chargeable.

It is now well settled by authority, that mutuality of remedy, existing at the time of action brought, is all that is required to enable a plaintiff to maintain his action; and that where there is a bill for specific performance in a court of equity, the bringing of the bill makes the complainant chargeable as on a memorandum of the contract signed by him. This renders the remedy mutual between the parties at the time when the action is commenced. The cases in which this doctrine is decided and settled are numerous. See 4 Russ. 298; *Flight* v. *Bolland,* S. C. 3 Cond. Ch. 677; Batten on Specific Performance, 62; *Salsbury* v. *Hatch,* 2 Young & Collyer, 64; *Telfair* v. *Telfair,* 2 Desaus. Ch. Rep. 271; 1 Sugd. Vend. 241, 242, 246; 2 Story, Eq. Jurisp. 736.

The allegations in the answer, of haste and confusion, and surprise, are not sustained by the proof in the cause, in any manner sufficient to render void the contract. The statements in the answer, setting up a condition of the contract contingent upon the approval of the defendant's wife, not being responsive to the bill, must be proved, to have effect. We do not find in the cause any legal evidence to prove that there existed any

such condition in the contract between the parties. Such a condition, if it existed, would alter or vary the terms of the written contract, and must, at least, be proved, by evidence independent of the answer and declarations of the respondent, before it can avail to prevent a decree for the specific performance of a contract in writing. See 2 Dan. Ch. Prac. 984, n.; *Rogers* v. *Sanders*, 16 Maine Rep. 96 ; 2 Gill, 120.

It is no bar to the remedy which the complainant here seeks, that the memorandum in writing does not contain a specific agreement to pay the future annuities, which it appears are a charge upon the land. That was a part of the contract to be performed by the other party, not by the party signing the memorandum in a manner to be charged therewith. It is not necessary that the whole agreement should be in writing, but the substance of it ; " a note or memorandum of the contract," not a detail of all its particulars, is what is required. See *Laythorp* v. *Bryant*, 29 Eng. Ch. 472; *Atwood* v. *Cobb*, 16 Pick. Rep. 230.

The complainant, in his bill, admits his agreement to pay the future annuities, and alleges his readiness to do so. If this was a parol condition of the contract, to be performed on his part, and he consents to it, the fact that it was not embodied and detailed in the written memorandum, is no reason why he should not have a decree against the respondent, he being ready to perform all the conditions of the contract which are incumbent on him. See *Martin* v. *Pycroft*, 15 Eng. L. & Eq. Rep. 378 ; *London & Birmingham R. R. Co.* v. *Winter*, 1 Craig & Phillips, 57.

We think, therefore, that there is sufficient proof in the cause to establish the contract set out in the complainant's bill, and must decree that the contract be specifically performed.

Decree. The decree, in substance, ordered Hazard to convey his title to the premises to the complainant upon receiving the amount of purchase-money stipulated, deducting therefrom the value of his wife's right of dower in the premises if she should refuse to release the same, such value to be ascertained by the master who settled the conveyance.